Argued and submitted July 23, 1997, reversed and remanded for further proceedings May 20, petition for review denied October 20, 1998 (327 Or 620)

# STATE OF OREGON,
*Appellant,*

*v.*

# DANIEL ROY LOYNES,
*Respondent.*

## (95-7046; CA A95198)

960 P2d 388

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Walter Ledesma, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before De Muniz, Presiding Judge, Deits, Chief Judge,* and Haselton, Judge.

DEITS, C. J.

---

* Deits, C. J., *vice* Richardson, S. J.

**DEITS, C. J.**

The state seeks reversal of the trial court's order dismissing defendant's case, with prejudice, based on a lack of a speedy trial. ORS 135.747; Or Const, Art I, § 10. We reverse and remand.

On March 25, 1995, defendant was cited for reckless driving, a Class A misdemeanor, in Tillamook County. ORS 811.140. The citation ordered defendant to appear in Tillamook County District Court on April 17, 1995. He did not appear at that time, nor did his attorney. The prosecutor, however, told the court that defendant's attorney had sent the district attorney's office a letter, which it had received on April 12, 1995, requesting that a plea of not guilty be entered for defendant. Both the court and the prosecutor contacted defendant's attorney to advise him that the local practice was that plea negotiations are permitted only before entry of a plea and that if defendant wished to engage in plea negotiations, he would need to contact the court and make an initial appearance, at which time a date could be set for entry of a plea. In response to this advice, defendant's attorney withdrew the plea. He was told that he could make a telephonic appearance for defendant on either April 17 or April 24, 1995. Neither defendant's attorney nor defendant appeared on those days. Defendant's attorney was contacted by a court employee on April 27, 1995, and asked to appear by telephone for defendant on May 1, 1995. Again, neither defendant's attorney nor defendant appeared.

On May 16, 1995, the court wrote to defendant's attorney advising him that he would be given one more chance to appear by telephone, on May 22, 1995. On that date, defendant's attorney appeared in court via telephone. Although defendant was not in his attorney's office, on the attorney's representation that he was authorized to enter a not-guilty plea on defendant's behalf, the court arraigned defendant and accepted his plea. The court set a trial date of July 26, 1995, to which defendant's attorney and the prosecutor agreed. Because defendant had not yet been booked and released, the court agreed to mail a release agreement to defendant's attorney for defendant to complete and return and agreed that he could be booked on the morning of trial.

Defendant's release was conditioned on his continuing to live at his current address and maintaining contact with his attorney. Defendant did not sign and return the release agreement.

Defendant and the state requested a reset of the July 26 trial date to give both parties additional time for trial preparation and to allow defendant to take a polygraph. Both parties agreed that the trial would be set for a date between September 1 and December 31, 1995. Trial was set for October 25, 1995. On October 18, 1995, defendant's attorney filed a motion to withdraw as defendant's attorney. In the motion, counsel stated that he was aware of the October 25, 1995, trial date, but that he had lost all contact with defendant despite repeated attempts to reach him by telephone and mail "for the last several weeks." Although the record does not show whether the case was taken off the docket, neither defendant nor his attorney appeared on October 25, 1995.

On March 1, 1996, the court signed an order allowing defendant's attorney to withdraw. On March 9, 1996, the prosecutor submitted a motion for a warrant for the arrest of defendant for his failure to appear. On March 22, 1996, the court issued the warrant. Defendant was arrested on the bench warrant on June 6, 1996. He posted bail and was given a court appearance date of June 24, 1996. Defendant appeared for the first time in person on that date. The court explained to defendant that the reason for the warrant was that defendant had violated the terms of his release by not keeping in contact with his attorney and that defendant's attorney had been given leave to withdraw due to defendant's failure to maintain contact with him. Defendant responded that he had kept in contact with his attorney. The court again arraigned defendant on the reckless driving charge, appointed him a new attorney and scheduled an appearance for July 15, 1996, for defendant to enter a new plea. The prosecutor was unable to be in court on that date, so defendant's new attorney appeared by telephone on July 10, 1996, and entered a plea of not guilty for defendant. On that date, the court set a trial date of August 28, 1996.

On July 30, 1996, a pretrial conference was held at which defendant's new attorney appeared by telephone and

reported that the defense was ready to proceed to trial. Subsequently, the prosecution filed a motion to set over the trial because two state's witnesses were scheduled to be on vacation on the date of the trial. The prosecutor advised the court that defense counsel could not be reached to determine his position on the motion. On August 27, 1996, the court granted the state's motion, stating in the order that no one appeared for the defense. The court set a new trial date of October 31, 1996.

On September 19, 1996, defendant filed a motion to dismiss for lack of a speedy trial[1] and on October 3, 1996, the court held a hearing on the motion. Defendant and his new attorney were present. Both defendant and his wife testified at the hearing. Defendant's previous attorney, who was supposed to testify over the phone, did not do so because he was not at his office when he was called by the court. Defendant's wife testified that sometime before the truck was stopped, she saw defendant get in the passenger side of the pickup truck and another person, Clark, get in the driver's side. She stated that when defendant and Clark left, Clark was driving. However, she did not see the officer stop the truck or issue the citation. She also testified that Clark was currently in Reno.

Defendant testified that Clark was in the truck when the deputy stopped them. Defendant also testified that he had maintained contact with his former attorney and that his attorney had told him on one or two occasions that he was attempting to set over the trial date and that he would advise him of the new date. Defendant stated that he lived at the same address that he did at the time he was cited, but that his telephone had been disconnected shortly afterward. He said that his former attorney told him that he was withdrawing from the case because it would cost him more to travel to court than it would for defendant simply to pay the fine. Defendant also testified that he later received a call from his former attorney telling him that he should seek local counsel

---

[1] Defendant's only ground for the motion was that "[m]ore than four months will pass from the arraignment that occurred on June 24, 1996 to the jury trial set for October 31, 1996." The court, however, concluded that, in determining if defendant's right to a speedy trial had been violated, it must consider the time from filing of the complaint to the date of trial.

and that his attorney did not send him a notice of a new trial date.

The trial court granted defendant's motion to dismiss. In doing so, it found credible defendant's testimony that he did not know about the dates when he was supposed to appear. The court also found defendant's former attorney not credible in his assertion that he had been unable to maintain contact with defendant. Nonetheless, the trial court found that the period of time from April 13, 1995, the date the citation was filed, through October 1995, when defendant's original attorney moved to withdraw, was attributable to defendant. The court attributed the time between October 1995 and the date when the bench warrant issued, March 1996, to the state, because it concluded that the failure to file the motion for the warrant was the fault either of the court or the prosecution. The court then determined that the period of time from when the warrant issued to when defendant was arrested on the warrant, in June 1996, was attributable to defendant. The court noted that "eight months is kind of a long time to wait" and that "something should have occurred there that would have at least caused you to call us and ask for another lawyer to contact you." The court then considered whether the time from defendant's arrest to his trial date was a delay caused by the state. It noted that from June 1996 to August 28, 1996, things were finally going at a speed that was "faster than we had hoped to do in the normal course." However, it attributed the set-over from August 28, 1996, to October 31, 1996, to the state because that set-over was requested by the state.

The trial court calculated the delay at 18 months and concluded that defendant was responsible for eight months of the delay and that "about the same [amount of time was] attributable to the state[.]" It then concluded that a delay of 18 months was "extraordinarily long" compared to the length of time that it ordinarily takes for a case to proceed from filing to trial. The court noted that, in its worst days, it took about six months from filing to trial on misdemeanor cases, but that the court was currently averaging from 60 to 90 days from filing to trial. Because it concluded that the period of time was "extraordinarily long," the court advanced to the

next prong of the speedy trial analysis. It found that Clark was the only eyewitness, that his testimony would be "critical," and that he was "no longer available through regular process[.]" On that ground, the court concluded that defendant had suffered actual prejudice and dismissed the case with prejudice.[2]

On appeal, the state argues: (1) that the trial court erred in the amount of time that it attributed to the state; (2) that even if the amount of time attributed to the state were correct, the delay was not significant enough to trigger an inquiry into the other speedy trial factors; and (3) that defendant failed to show that he was prejudiced by the delay and that, therefore, dismissal was not justified. Defendant responds (1) that the length of delay was "substantially greater than average"; (2) that the state did not preserve its argument that it should not be held responsible for the time between October 1995 and March 1996 and that, even if we were to review that argument, that period of time was properly attributed to the state; and (3) that he established actual prejudice.

The court is to consider three factors when analyzing whether a defendant has been denied the right to a speedy trial under Article I, section 10: "(1) the length of the delay, (2) the reasons for the delay and (3) the resulting prejudice to the accused." *State v. Emery*, 318 Or 460, 472, 869 P2d 859 (1994) (quoting *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987)). We review whether defendant was brought to trial within a "reasonable time" as a question of law. *State v. Green*, 140 Or App 308, 310-11 and n 3, 915 P2d 460 (1996).

---

[2] Defendant sought dismissal under ORS 135.747 and Article I, section 10, of the Oregon Constitution, but not the United States Constitution. Dismissal under ORS 135.747 permits reprosecution. We assume that, because the trial court dismissed with prejudice, it based its decision on the Oregon Constitution. *See State v. Ivory*, 278 Or 499, 503, 564 P2d 1039 (1977) (implicit in order granting dismissal "with prejudice" was conclusion that trial court had found that the defendant's right to a speedy trial had been violated under United States Constitution); *id.* at 505 (remedy for violation of right to speedy trial under United States Constitution and Oregon Constitution is the same, "dismissal with a bar to reprosecution").

██ Under the first factor, if the length of the delay in bringing the case to trial is "substantially greater than average," an inquiry into the second two factors is triggered. *Mende*, 304 Or at 23-24. Here, the length of delay was about 19 months.[3] The trial court found that that was "substantially greater than average" based on its finding that misdemeanor cases in the Tillamook County District Court were averaging between two to three months from filing to trial. We agree with the trial court that under those circumstances the delay was sufficient to trigger an inquiry into the other factors. *See State v. Wirth*, 114 Or App 496, 499, 835 P2d 952 (1992) (nine months is enough to trigger an inquiry into the other factors); *see also Emery*, 318 Or at 471 n 17 (noting that the Oregon Judicial Conference in 1990 recommended that 90 percent of all misdemeanor cases should be adjudicated within 90 days from the date of arraignment, which, although not binding, is instructive in determining whether the delay was reasonable).

We next look at the reasons for the delay. About ten months of the delay is attributable to defendant; six months from April 1995 to November 1995 and three months from March 1996 to June 1996. The major portion of the delay attributed to the state was the five-month time period between defendant's nonappearance in October and the issuance of a bench warrant. The reason for this delay is not apparent from the record. Arguably, the state's failure to obtain the warrant in a timely manner was negligent, although there is no evidence that the delay was intentional or designed to impede the defense. *See State v. Chinn*, 115 Or App 662, 665, 840 P2d 92 (1992) (police were arguably negligent for not contacting state agencies to determine if they had another address for the defendant in order to serve arrest warrant).

█ The period of time from June 1996, when defendant entered his plea, to August 1996, the date for which the trial was set at that time, was two months. The reason for the delay in the final two months, August 1996 to October 1996, was the state's request for a set-over when it discovered that

---

[3] Although the trial court calculated the time period to be 18 months, the delay actually was closer to 19 months.

two of its witnesses were going to be out of town on the trial date. Again, however, even if that could be considered neglect, it is not the kind of neglect that raises the specter of maneuvering so as to gain an unfair advantage. *State v. Dykast*, 300 Or 368, 377-78, 712 P2d 79 (1985).[4] We agree with the trial court that no part of the delay was intentionally designed to hamper the defense. When we consider the relative length of the state's portion of the delay, the reason for the delay, and the fact that the delay was not intended to impair defendant's ability to defend, the delay does not weigh heavily in defendant's favor. *State v. Hadsell*, 129 Or App 171, 177, 878 P2d 444, *rev den* 320 Or 271 (1994).

■■ Accordingly, as with most speedy trial cases, the constitutional analysis "turns on whether defendant was prejudiced by the delay." *Green*, 140 Or App at 316. Under a constitutional analysis, a defendant has the burden of establishing some degree of actual prejudice. *State v. McQueen*, 153 Or App 277, 283, 956 P2d 1046 (1998) (citing *Mende*, 304 Or at 23). A defendant can assert three possible types of prejudice from the delay: excessive pretrial incarceration, the anxiety and concern of the defendant, and impairment to the defense. *Emery*, 318 Or at 377. The prejudice that defendant asserts occurred here is that his ability to defend himself was impaired because of the absence of a key witness. To establish impairment of defense of a constitutional magnitude, a defendant must demonstrate "actual prejudice to the ability to prepare a defense" as opposed to speculative prejudice to his defense. *Mende*, 304 Or at 23; *State v. Garcia-Plascencia*, 148 Or App 318, 324, 939 P2d 641, *rev den* 326 Or 58 (1997).

Defendant relies on the absence of witness Clark to demonstrate the prejudice to his ability to defend himself. As noted above, defendant testified that Clark was in the truck with him, and his wife testified that it was Clark who was

---

[4] As the court noted in *Dykast*:

"In our mobile society, the postponement of criminal cases because of the unavailability of witnesses is one of the most common causes of delay. Granted, most requests for postponements could be avoided by earlier preparation of the case. We are not unaware, however, of the heavy caseloads in many district attorneys offices. The postponement resulted from the prosecution's neglect, but there is no suggestion that the prosecution was trying to obtain any unfair advantage." 300 Or at 377-78.

driving the truck when she saw defendant and Clark leave before they were stopped. Defendant's wife also testified that Clark was now in Reno. The trial court concluded that because Clark was the only eyewitness other than defendant and the officer at the time the truck was stopped, the delay prejudiced the defense and dismissal was warranted. The trial court based its decision, in part, on its distinction of the Supreme Court's decision in *Emery*. In *Emery*, the defendant asserted that, during the delay caused by the state, a potential witness for the defense died. 318 Or at 473-74. The trial court there had concluded, and the Supreme Court agreed, that the potential witness was one of several people who had witnessed the event in question and that he had seen nothing that the other witnesses had not also seen. The Supreme Court held that the defendant had failed to show that he was prejudiced because he had not shown how the deceased witness could have assisted the defendant in preparing his defense. *Id.* at 474. The trial court here distinguished this case from *Emery* because Clark was the *only* witness who was with defendant when he was cited.

■ ■ Although the trial court is correct that the record shows that Clark was the only person whom defendant identified as being with him when he was cited, that finding alone does not lead to the conclusion that defendant was prejudiced. There is no evidence that Clark would have testified that he was driving nor can it be inferred from the evidence that he would have so testified, particularly because such testimony could expose him to criminal prosecution.[5] In addition, defendant did not establish that Clark's whereabouts were unknown or that Clark was unavailable to testify due to the state's delay. Defendant presented no evidence as to when Clark left the state. Further, defendant offered no evidence as to whether he even attempted to reach Clark to secure his testimony for either the August or October 1996 trial dates. *See Hadsell*, 129 Or App at 175 (the defendant did not attempt to locate the witness until her second trial and then did not explain why he could not be summoned to

---

[5] As the Supreme Court noted in *Ivory*, a witness who is in a position to assert the right against self-incrimination is unlikely to waive it. 278 Or at 509 n 1. Here, as in *Ivory*, there is no evidence in the record as to whether Clark would or would not "be in a position to invoke the privilege."

appear under the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings for the second trial); *see also Garcia-Plascencia,* 148 Or App at 323-24 (defendant made no effort to locate or speak to the potential witness until 18 months after he was arrested and three weeks before filing the speedy trial motion and had not shown that the witness was not available). Defendant's argument is too speculative and he has failed to meet his burden of proving prejudice. Consequently, we conclude, as a matter of law, that defendant was brought to trial within a reasonable time and that the trial court erred in allowing defendant's motion to dismiss for lack of a speedy trial under Article I, section 10, of the Oregon Constitution.

Reversed and remanded for further proceedings.