Argued and submitted January 29, reversed and remanded with instructions to
dismiss the indictment with prejudice July 15, 1998

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID L. ROHLFING,
*Appellant.*

## (87-12-37357; CA A94743)

963 P2d 87

Diane L. Alessi, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, C. J., *vice* Rossman, S. J.

## DE MUNIZ, P. J.

Defendant appeals his conviction for burglary in the first degree. ORS 164.225. He claims that the eight-year delay between his indictment and arrest denied him his statutory and constitutional right to a speedy trial. We reverse.

On November 2, 1987, defendant was seen running away from a house that had been burglarized and was later identified by the victim during a show-up identification while being questioned regarding another matter. During the questioning, the police obtained defendant's address and phone number. On December 17, 1987, defendant was indicted for burglary in the first degree, and an arrest warrant was issued. Six weeks after the indictment was returned, the police attempted to arrest him. However, defendant had moved, and the police were not able to serve the indictment and warrant on him. Although defendant had moved from the address he had given during questioning, he remained in the state for the next 18 months. He then moved out of state, and, for at least two years before his arrest in December 1995, he lived in Vancouver, Washington. Throughout the delay between his indictment and his arrest, defendant or a family member could have been reached at the telephone number given to the police in 1987.

Before trial, defendant moved to dismiss the indictment, asserting a violation of his right to a speedy trial under ORS 135.747 and the Oregon and federal constitutions. The trial court denied defendant's motion, defendant then waived a jury, and the court found him guilty.

On appeal, defendant assigns error to the trial court's refusal to dismiss the indictment under ORS 135.747, Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. Under each provision, whether defendant was brought to trial within a reasonable time is a question of law. *State v. Green*, 140 Or App 308, 310-11, 915 P2d 460 (1996). We begin with the statutory claim. *State v. Ivory*, 278 Or 499, 503, 564 P2d 1039 (1977).

■     The speedy trial statute, ORS 135.747, provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

The statute applies to delay between indictment and arrest, as well as to delay between arrest and trial. *Green*, 140 Or App at 310 n 1. Under ORS 135.747, "the proper inquiry is limited to whether defendant caused or consented to the delay and, if not, whether the lapse of time between indictment and trial was 'reasonable.'" *Green*, 140 Or App at 313. ORS 135.747 provides a "'housecleaning' mechanism triggered by the length of time that a particular case has been in the system, rather than by the effect of the delay on a particular defendant." *State v. Emery*, 318 Or 460, 467, 869 P2d 859 (1994).

Essentially, the state contends that, because defendant moved after his initial contact with the police, and the state could not locate him after he was indicted, the delay between indictment and arrest was defendant's fault or, in any event, was not unreasonable under the circumstances. In support of both propositions, the state relies on our analysis in *State v. Pirouzkar*, 98 Or App 741, 780 P2d 802, *rev den* 309 Or 333 (1989). In *Pirouzkar*, there was more than a four-year delay between the state's unsuccessful attempt to serve the indictment on the defendant in Oregon and her eventual arrest in California. We held that the delay was not unreasonable under the circumstances, pointing out that the defendant had left the state after the indictment, and the state "did not know where she lived before her arrest." *Id.* at 744.

The state argues that, although the delay between indictment and arrest is longer here than in *Pirouzkar*, the other factors in *Pirouzkar* are identical and compel the same result. We disagree with the state's reading of *Pirouzkar*. There, the state took an additional step to bring the defendant to trial that is not present here. It took "action to further the prosecution," *id.* at 744 n 2, by entering the arrest warrant information in "local, regional and national law enforcement computer systems that are intended to inform any officer running a routine records check that warrants for [the] defendant's arrest are outstanding." *Id.* at 743.

■     Here, the record does not reveal that the state took any action to "further the prosecution" after its one unsuccessful attempt to serve defendant at his former residence six weeks after he had been indicted. Although defendant had moved before that arrest attempt, and ultimately moved out of state, there is no evidence that he was aware that he had been indicted or that he moved or left the state to avoid arrest. The evidence does establish that defendant was arrested in Vancouver, Washington. However, there is no evidence in the record about the circumstances of that arrest, and no inference can be drawn that defendant was arrested because the state had entered the arrest warrant information into law enforcement computer systems intended to alert law enforcement of the outstanding arrest warrant for defendant or, if it did, when that was done. Additionally, during the entire eight-year delay, defendant or a family member was available at the telephone number that defendant had given to the police in 1987.

We conclude that, under these circumstances, defendant cannot be deemed to have consented to or caused the delay and that, in the absence of any effort by the state "to further the prosecution," the eight-year delay between defendant's indictment and his arrest is unreasonable. Accordingly, defendant was denied his right to a speedy trial under ORS 135.747, and the trial court erred in not dismissing the indictment on that ground.

■■     Our analysis does not, however, end with consideration of ORS 135.747. The remedy for a violation of ORS 135.747 is dismissal without prejudice, leaving the state free to reindict defendant. However, a constitutional violation of defendant's speedy trial right requires dismissal of the indictment with prejudice. We therefore must address defendant's claim that his speedy trial right under the Oregon Constitution was violated.[1] Article I, section 10, of the Oregon Constitution, provides that "no court shall be secret, but justice

---

[1] Defendant also argues that the state violated ORS 131.125, which requires that prosecutions for felonies generally must be brought within three years after their commission. However, we need not separately address defendant's contention. Under ORS 131.135, a prosecution is commenced when a warrant is issued "provided that the warrant or other process is executed without unreasonable delay," and the test to apply for unreasonable delay is the same as under Article I, section 10. *State v. Chin*, 115 Or App 662, 665, 840 P2d 92 (1992).

shall be administered, openly and without purchase, completely and without delay." "Without delay" has been equated with the right to a speedy trial. *State v. Jackson*, 228 Or 371, 377, 365 P2d 294 (1961). In determining whether a speedy trial violation of constitutional dimension has occurred, we look at the length of the delay, the reasons for delay, and the resulting prejudice to the accused. *Ivory*, 278 Or at 507; *Emery*, 318 Or at 468. We do not balance the elements one against the other. Instead, we examine the relevance of each in giving effect to the constitutional guarantee of a speedy trial. *State v. Mende*, 304 Or 18, 22, 741 P2d 496 (1987). The length of delay is the threshold element that triggers examination of the other elements. *Id.*; *Green*, 140 Or App at 314.

■ Drawing from our analysis of defendant's statutory speedy trial claim, we conclude, without further discussion, that the eight-year delay is "substantially greater than average," thereby triggering our examination of the two remaining factors: the reason for the delay and the prejudice resulting to defendant from the delay.

■ The state contends, as it did under ORS 135.747, that the delay between defendant's indictment and his arrest is not unreasonable because

> "the state attempted to arrest defendant roughly six weeks after it issued the indictment. Defendant moved soon after the crime, he left the state altogether within roughly eighteen months, and the state did not know where he was. Defendant presented no evidence suggesting that additional efforts by the state could have reduced the time lag between indictment and arrest."

We reject the state's efforts to blame defendant for the delay between his indictment and arrest. On his initial contact with the police, defendant gave the police both his address and his telephone number. Throughout the entire eight-year delay, either defendant or a member of his family could have been reached through that telephone number. Nevertheless, the state made no effort to locate defendant through the telephone number after its one unsuccessful effort to serve defendant six weeks after he was indicted. As we stated above, defendant was unaware of his indictment, and there is no evidence that defendant moved or left the state to avoid

arrest and prosecution. Under these circumstances, the delay cannot be attributed to defendant. Instead, because the state made no subsequent effort to locate defendant either through the telephone number in its possession or through law enforcement computer systems available to it, we assign responsibility for the delay to the state. However, in the absence of intentional misconduct, it does not weigh heavily in defendant's favor. *Green*, 140 Or App at 316; *see also State v. Loynes*, 154 Or App 1, 9, 960 P2d 388 (1998).

■　　As with most cases in which the delay is sufficient to trigger analysis of the two other factors, prejudice to defendant resulting from the delay is the pivotal factor. Here, defendant makes no argument that the eight-year delay between indictment and arrest "actually" prejudiced his defense. Instead, defendant argues that he has met his prejudice burden because the "length of post-indictment delay [eight years] is sufficient to create a presumption that [he] has been prejudiced."

　　In *Mende*, the Supreme Court acknowledged that "there may be a point at which the delay is so 'manifestly excessive and unreasonable' that the delay itself requires dismissal." 304 Or at 24. More recently, in *State v. Garcia-Plascencia*, 148 Or App 318, 321, 939 P2d 641, *rev den* 326 Or 58 (1997), we commented, citing to *Mende*, that, "[i]n some cases, the pretrial delay may be so excessive that Article I, section 10, requires dismissal without further inquiry." The state acknowledges that a delay may be so excessive that a defendant need not prove actual prejudice. However, the state argues, relying on *Doggett v. United States*, 505 US 647, 652, 112 S Ct 2686, 120 L Ed 2d 520 (1992), that the United States Supreme Court has made it clear that an eight-year delay between indictment and arrest does not by itself require dismissal. Assuming that United States Supreme Court jurisprudence is pertinent and persuasive to the development of speedy trial analysis under Article I, section 10, a close reading of the Court's analysis in *Doggett* ultimately benefits defendant, not the state.

■　　In *Doggett*, eight and one-half years elapsed between Doggett's indictment on drug charges and his arrest. During most of that period, the government erroneously believed

that Doggett was living abroad, but it took no steps to test that assumption or otherwise seek to locate him either abroad or in the United States. In fact, two years after the indictment, Doggett, unaware that he had been indicted, settled in Virginia, married, earned a college degree, and lived openly under his own name. However, in 1988, eight and one-half years after his indictment, the United States Marshal's service ran a simple credit check on several thousand people subject to outstanding warrants and, within minutes, learned where Doggett lived and worked.

In *Doggett*, the Supreme Court found that the eight and one-half-year delay was excessive and dismissed the indictment, holding that

> "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* [*v. Wingo*, 407 US 514, 33 L Ed 2d 101, 92 S Ct 2182 (1972)] criteria, * * * it is part of the mix of relevant facts, and its importance increases with the length of delay." 505 US at 655-56.

Having concluded that the delay of eight and one-half years was presumptively prejudicial, the court then went on to consider the concept of presumptive prejudice in relationship to the reasons or cause of the delay:

> "*Barker* made it clear that 'different weights [are to be] assigned to different reasons' for delay. Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, *cf. Arizona v. Youngblood*, 488 US 51, 102 L Ed 2d 281, 109 S Ct 333 (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with

the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction the harder it will try to get it.

"To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8½ years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays 'extraordinary.' When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, * * * and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Doggett*, 507 US at 657-58 (brackets in original; some citations omitted; footnote omitted).

We conclude that the Court's analysis in *Doggett* would compel dismissal of the indictment here. We are also persuaded that, under Article I, section 10, of the Oregon Constitution, the eight-year delay between indictment and defendant's arrest was excessive in the extreme and is sufficient to give rise to presumptive prejudice. As in *Doggett*, the cause of the eight-year delay here was the state's indifference or negligence in failing to take even the most basic steps to locate defendant in order to pursue the prosecution against him. Defendant did not acquiesce in the delay, and the state has not rebutted the presumption of prejudice arising from the eight-year delay. We conclude that the trial court erred in not dismissing the indictment.

Because we resolve defendant's speedy trial claim under the Oregon Constitution, we do not reach his claims under the federal constitution.

Reversed and remanded with instructions to dismiss indictment with prejudice.