On appellant's petition for reconsideration filed November 22, and respondent's response to petition for reconsideration filed December 28, reconsideration allowed; former disposition (241 Or App 724, 250 P3d 992 (2011)) adhered to July 11, petition for review denied November 21, 2012 (352 Or 666)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM CESAR GONZALES-SANCHEZ,
*Defendant-Appellant.*

Multnomah County Circuit Court
020343091; A141872

282 P3d 19

Peter Gartlan, Chief Defender, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, for petition.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Justice J. Rillera, Assistant Attorney General, for response.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant petitions for reconsideration of our disposition in *State v. Gonzales-Sanchez*, 241 Or App 724, 250 P3d 992 (2011). In that case, we affirmed without opinion defendant's conviction for driving under the influence of intoxicants (DUII), rejecting his contention that the trial court erred in denying his motion to dismiss for lack of a speedy trial under ORS 135.747.[1] Defendant asks us to reconsider that disposition in light of the Supreme Court's recent decision in *State v. Glushko/Little*, 351 Or 297, 266 P3d 50 (2011). We grant defendant's petition and, having considered *Glushko/Little*, conclude that the delay in this case was reasonable under the circumstances. Accordingly, we affirm.

We begin with the relevant procedural facts. Defendant was charged with DUII on March 25, 2002. The next day, defendant entered into a diversion agreement on that charge in which he agreed to, among other things, keep the court advised of his current address, pay diversion fees, and complete alcohol abuse treatment within one year. Defendant also acknowledged the following:

> "If you fail to complete the program, the prosecution will continue.
>
> "\* \* \* \* \*
>
> "If the court allows you to enter into the diversion program, and if you keep these agreements, the court will dismiss the DUII charge at the end of one year. **It is up to you to ask the court to dismiss the charge at the end of the diversion period by filing a motion to dismiss with the court.**
>
> "The court will terminate this diversion agreement if the court finds that you have violated the terms of the diversion agreement or that you were not eligible for diversion to begin with. The court will make this determination at a hearing where you can 'show cause' why you should not be

---

[1] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

removed from the diversion program. \* \* \* **Notice of such hearings will be sent to you by regular mail.** If you fail to appear in court as directed by the mailed notice, the court can terminate the diversion agreement and prosecution of the offense will be resumed."

(Boldface in original.)

In April 2002, defendant received permission from the court to begin his alcohol abuse treatment in Connecticut. That same month, defendant provided the court with the address of a residence on Adelaide Street in Hartford, Connecticut (the Adelaide residence), and a telephone number. Sometime later, the court received information that defendant had failed to pay the required diversion fees and to begin treatment. Accordingly, on January 23, 2003, the court ordered defendant to appear at a hearing set for February 10, 2003, and show cause why his diversion program should not be terminated. The court mailed notice of that hearing to the address on Adelaide Street that defendant had provided in April 2002. The letter was never delivered to that address. Instead, the United States Postal Service (USPS) returned the letter to the court; on the envelope was a sticker with part of defendant's hyphenated surname, a different Hartford address, and a notification that the USPS mail-forwarding service had expired. Defendant did not receive actual notice of the termination hearing.

Defendant failed to appear at the termination hearing on February 10, 2003. Accordingly, the court terminated defendant's diversion program and issued a warrant for his arrest. The Multnomah County Sheriff's Office entered the warrant into two law enforcement databases on February 17, 2003. Although the warrant itself referenced defendant's Adelaide Street address, the sheriff's office mailed notice of the arrest warrant to an address in Portland. There is no evidence in the record that that address was ever connected to defendant. The letter was not returned to the sheriff's office.

Defendant turned himself in on February 15, 2009. Prior to trial, defendant moved to dismiss the DUII charge, arguing, in part, that the six-year delay between

the termination of his diversion program and trial was unreasonable under ORS 135.747.[2] The state asserted that defendant had implicitly consented to the delay by failing to appear at the termination hearing. Defendant contended that his failure to appear at the termination hearing was not an implicit consent to the delay because he had not received notice of that hearing. The state argued that defendant did not receive notice of that hearing because he had moved from the Adelaide residence and failed to advise the court of his new address as required by the diversion agreement.[3] The state further argued that, in any event, defendant knew that his DUII charge was still pending and that he had continuing obligations under his diversion agreement; in the state's view, under those circumstances, defendant's failure to contact the court prior to February 2009 was an implicit consent to the delay.

The court found that the state had mailed the letter notifying defendant of the termination hearing to defendant's last known address—the Adelaide residence—and that defendant had never received that letter. However, the court did not make a finding regarding whether defendant had moved from the Adelaide residence and, instead, stated that it was "not in a position to ascribe any responsibility for [the letter] not getting to [defendant] except to say that apparently it was the post office's opinion that he failed to provide a forwarding address, moving the mail on from the address in Hartford."[4] After noting that defendant "knew he had obligations to [complete treatment] and he failed

---

[2] Defendant acknowledged that he had consented to the 11-month delay during the diversion period.

[3] In response, defense counsel suggested that defendant had, in fact, moved:

"We're assuming that [defendant] actually moved from the [Adelaide address]. *He was not physically at that address*, but * * * he's prepared to testify that his family was still at that address and that that letter [providing notice] never made it to that address."

(Emphasis added.)

[4] Defendant asserts, to the contrary, that the court explicitly found that he had kept the court apprised of his address and suggests that, therefore, the court implicitly found that he had not moved from the Adelaide residence. We disagree. The court noted that

"defendant has a duty to keep * * * the court posted.

"Now, of course, he did do it[,] and then we have to address what happens when the letter for some reason doesn't get delivered."

to keep them up," the court denied defendant's motion to dismiss:

> "It's hard to know where [the] problem [of defendant not receiving the letter] got started, but I'm satisfied that the state did what they could sending him the letter at the last known address and that that's all they have to do, so I'm going to deny the motion for dismissal based on the speedy trial."

Defendant was convicted of DUII following a stipulated facts trial. Defendant appealed, reiterating his argument before the trial court. After we affirmed without opinion, the Supreme Court decided *Glushko/Little*, which we describe in more detail below. On reconsideration, defendant asserts that that case requires a different result. The state responds that, under the circumstances in this case, the delay is reasonable.

As noted, ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Review of a trial court's decision on a motion to dismiss for lack of a speedy trial under that statute requires a two-step analysis. "First, we must determine the relevant amount of delay by subtracting from the total delay any periods of delay that defendant requested or consented to. Second, we then determine whether that delay is reasonable." *Glushko/Little*, 351 Or at 305.

The total delay in this case is seven years. Defendant concedes that he consented to the 11-month delay prior to the termination of his diversion program. *See State v. McQueen*, 153 Or App 277, 281, 956 P2d 1046, *rev den*, 327 Or 554 (1998) ("[D]efendant's application to the diversion program is not consent to delay beyond the termination of the program."). Additionally, both parties agree that defendant did not consent to the remaining six-

---

As the state points out, read in context, it is more likely that the court's statement that "he did do it" refers to defendant's effort to provide the court with his original Adelaide address. Nothing in that statement suggests that defendant did not later move from that address.

year delay by failing to appear or by failing to contact the court prior to February 2009. *See Glushko/Little,* 351 Or at 315 (holding that "a defendant gives 'consent' to a delay only when the defendant expressly agrees to a postponement requested by the state or the court"). Accordingly, that delay is attributable to the state.[5] To the extent that the trial court concluded that defendant consented to the six-year delay, it erred in doing so.

That is not the end of our analysis. We must still determine whether the six-year delay is reasonable under ORS 135.747, which "requires an examination of all the attendant circumstances." *Glushko/Little,* 351 Or at 315-16 (quoting *State v. Johnson,* 339 Or 69, 88, 116 P3d 879 (2005)) (internal quotation marks omitted). "In particular, 'the circumstances that cause the delay generally will determine whether the delay (and thus, the overall time period for bringing the defendant to trial) is reasonable.'" *Id.* at 316 (quoting *Johnson,* 339 Or at 88) (emphasis omitted from *Glushko/Little*). "We review the question whether the delay in bringing a defendant to trial was 'reasonable' within the meaning of ORS 135.747 as a matter of law." *Id.*

In *Glushko/Little,* the Supreme Court considered whether delay that followed the defendants' failure to appear was reasonable. In that combined case, both of the defendants had notice that they were legally required to appear at respective hearings. *Id.* Additionally, both were informed that failing to appear would result in warrants for their arrest. *Id.* The defendants failed to appear, *id.,* and the delays before trial were eight and a half years and nine and a half years, respectively. *Id.* at 303. One defendant was on probation on two other charges for at least six months after his failure to appear. *Id.* at 316-17. The other had provided the state with a California address and a friend's

---

[5] As we have previously noted:

"'Attributable to the state' in this sense merely means the unconsented portion of the delay, the part of the delay period included in the statutory calculation of reasonableness. The phrase 'is simply a shorthand way of saying that the delay was not one for which the defendant applied or to which the defendant consented' and implies no causative role on behalf of the state. *State v. Spicer,* 222 Or App 215, 221, 193 P3d 62 (2008)."

*State v. Davis,* 236 Or App 99, 107 n 3, 237 P3d 835 (2010).

phone number and, later, maintained a residence and employment in Oregon, and applied for and received an Oregon identification card and an Oregon driver's license. *Id.* at 302, 304. On appeal, the defendants asserted that the delays were unreasonable because, despite their failures to appear, the state could have tried harder to locate them. *Id.* at 316-17. The court rejected that argument:

> "The fact that the state may or may not have been able to take additional steps to track down [the] defendants is not the point when, as in this case, [the] defendants were entirely in control of the amount of delay that followed their failures to appear. *Cf. Johnson,* 339 Or at 88-89 (state-caused delay, such as resource deficiencies and trial court scheduling decisions, is relevant to reasonableness analysis under ORS 135.747). Both knew about their obligations to appear, as we have noted, and both knew that failing to do so would result in the issuance of warrants for their arrests. Both were well aware of the fact that their failures to appear delayed the prosecution of the cases against them. As this court explained in [*State v. Jackson,* 228 Or 371, 381, 365 P2d 294 (1961)], a court is not required to dismiss a case when a defendant, 'by his conduct bring[s] about the very delay in the prosecution of a criminal case which he afterwards claims to be a violation of his right to a speedy trial.'"

*Glushko / Little,* 351 Or at 317 (fourth set of brackets in *Glushko / Little*).

Defendant contends that this case is distinguishable from *Glushko / Little* because, unlike the defendants in that case, he did not receive notice of the diversion termination hearing. In defendant's view, because he did not *knowingly* fail to appear at that hearing, he "did not have control over the delay." Defendant further argues that the state caused the delay by sending notice of the arrest warrant to a random Portland address and by failing to take additional steps to contact him, including calling the telephone number that he had provided in April 2002. The state responds that defendant knew that he had a pending criminal charge in Oregon and that he had not completed his obligations under the diversion agreement. In the state's view, under those circumstances, the state's efforts to locate defendant—namely, contacting defendant at his last known address and

entering the warrant into two law enforcement databases—were sufficient to render the delay reasonable under ORS 135.747. We agree with the state.

We conclude that the state made sufficient efforts to locate defendant and that defendant was primarily responsible for the delay in the prosecution of his crime. In light of those attendant circumstances, the six-year delay was reasonable. The state mailed the letter advising defendant of the termination hearing to defendant's last known address in Connecticut. When that letter was returned and defendant failed to appear, the state entered the resulting arrest warrant into two law enforcement databases. At that point in time, given the USPS sticker on the returned letter, the state could have reasonably concluded that defendant had moved from the Adelaide residence, that it did not have defendant's current address, and that further attempts to communicate with defendant by mail would be unavailing. Given those efforts, the state did not leave defendant's case "languishing in the criminal justice system." *See Johnson*, 339 Or at 90 (identifying the purpose of the speedy trial statutes as "provid[ing] a method for dismissing cases that are languishing in the criminal justice system" (brackets in original)). Rather, the state took timely action to locate defendant and prosecute the case.

As noted, defendant argues that, in any event, the state should have telephoned him at the number that he had provided in April 2002. Defendant relies on *State v. Rohlfing*, 155 Or App 127, 963 P2d 87 (1998), in which we held that an eight-year delay was unreasonable, in part, because the state had not telephoned the defendant, who had moved. However, that case is distinguishable. In *Rohlfing*, there was no evidence that the state had entered the warrant into law enforcement databases. *Id.* at 131. Moreover, in that case, "[a]lthough [the] defendant had moved before [the] arrest attempt, and ultimately moved out of state, there [was] no evidence that he was aware that he had been indicted or that he moved or left the state to avoid arrest." *Id.* Here, defendant was aware of the incomplete resolution of the DUII charge. Accordingly, we reject that argument without further discussion.

More importantly, the delay in this case was reasonable because defendant primarily caused that delay. As noted, defendant sought and received the court's permission to move to Connecticut and begin treatment there. At that time, defendant had notice that the diversion agreement merely stayed his DUII charge pending his completion of the diversion requirements and that the prosecution would continue if he failed to do so. The agreement informed defendant that it was "up to you to ask the court to dismiss the charge at the end of the diversion period" or otherwise defendant would be required to appear "at a hearing where you can 'show cause' why you should not be removed from the diversion program." (Boldface omitted.) Nevertheless, defendant did not complete either of those requirements, and he remained out of communication with the court until February 2009. By failing to either initiate the conclusion of diversion or to show cause why diversion should not be terminated, defendant breached his contractual obligations to the court. That breach was the primary cause of the resultant delay.

That disposition adheres to the "well-established principle that it is the state's obligation, and not the defendant's, to bring a defendant to trial within a reasonable period of time." *Johnson*, 339 Or at 95; *see also State v. Vawter*, 236 Or 85, 87, 386 P2d 915 (1963) (under Oregon law, "it is not incumbent upon the accused to demand a trial or take affirmative action to enforce his right to a speedy trial"). In this case, defendant was contractually obliged to facilitate the conclusion of his diversion status. His failure to do so hindered the prosecution of the DUII charge. Under those circumstances, the extent of the state's actions to locate and prosecute defendant was sufficient. Accordingly, the delay is reasonable under ORS 135.747.

Affirmed.