Argued and submitted September 9, reversed and remanded December 22, 2021, petition for review denied May 5, 2022 (369 Or 705)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

CARLOS DAVID DELATORRE,
*Defendant-Respondent.*

Polk County Circuit Court
09P3539; A172360

502 P3d 767

The state appeals from a judgment dismissing its case against defendant on speedy trial grounds. Defendant was charged by indictment in 2009 with rape in the first degree, ORS 163.375, rape in the second degree, ORS 163.365, and sexual abuse in the first degree, ORS 163.427, and then he fled the state for nine years. During the delay, the police entered his name into the Law Enforcement Data System repeatedly and followed up on all known tips. At trial in 2019, the trial court granted defendant's motion for dismissal, in which he argued that the delay had violated his constitutional right to a speedy trial. On appeal, the state assigns error to the court's ruling, particularly its finding that the delay was attributable to the state and that the delay resulted in prejudice to the defense. *Held*: The trial court erred in granting the motion to dismiss. Although the length of the delay was significant, defendant's evasion of law enforcement was the cause of the delay, and the state made reasonable efforts to locate and prosecute defendant. Further, the delay did not prejudice defendant, as faded memories alone only establish a speculative harm to the defense, and any prejudice was caused by defendant's evasion.

Reversed and remanded.

Monte S. Campbell, Judge.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Andrew D. Robinson, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Reversed and remanded.

**MOONEY, J.**

The state appeals from a criminal judgment dismissing its case against defendant on speedy trial grounds. Defendant was charged by indictment in 2009 with rape in the first degree, ORS 163.375, rape in the second degree, ORS 163.365, and sexual abuse in the first degree, ORS 163.427. Defendant fled the state for a period of years and, when the case proceeded to trial in 2019, he moved for dismissal with prejudice, arguing that the nine-year delay violated his state and federal constitutional rights to a speedy trial. The trial court granted the motion. The state now assigns error to that ruling, arguing that the trial court improperly attributed the reasons for delay to the state and that defendant failed to show that the delay resulted in prejudice. We agree with the state that the court erred in granting the motion to dismiss. We reverse and remand.

We review the grant or denial of a motion to dismiss on speedy trial grounds for legal error, accepting the trial court's findings of historical fact if there is evidence in the record to support them. *State v. Stinnett*, 291 Or App 638, 639, 422 P3d 372 (2018). In particular, we are bound by the "trial court's findings of fact concerning the length and reasons for the delay *** if supported by [the] evidence." *State v. Johnson*, 342 Or 596, 608, 157 P3d 198 (2007).

The Independence police spoke with defendant in May 2009 about a report that he had raped a 12-year-old girl, the daughter of his wife's cousin. When police attempted to follow up with defendant on June 8, 2009, he and his family had disappeared. Defendant and his wife had quit their jobs, pulled their children from school, and moved away from their home. The police tried to contact defendant by calling the phone numbers associated with him and his wife, but those numbers were no longer in service. The alleged victim's mother typically saw defendant's family daily, but she did not know where the family had gone. On November 4, 2009, defendant was indicted and a warrant for his arrest was issued. The police promptly entered that warrant into the Law Enforcement Data System (LEDS), alerting law enforcement nationwide of defendant's outstanding warrant should he come into any police contact.

There was no further information on defendant's whereabouts until 2018. There were rumors that the family had fled to Mexico or Texas. The Independence police continued to confirm that the warrant was active in LEDS, running defendant's name through the system 56 times by 2013. In 2018, the alleged victim contacted the police and said that she believed, according to what she had seen online, that the family was in Texas. From that information, the police searched and found that defendant's wife had obtained a Texas driver's license on December 28, 2009, but there was still no available information for defendant. The FBI received a separate tip in September 2018 that also suggested that defendant was in Texas. From that tip, the FBI went to Texas and spoke to a woman believed to be defendant's wife, who indicated that he was not home. The FBI also learned who defendant's employer was and obtained defendant's cell phone number from them. After that, defendant quit his job and stopped using that cell phone.

The Independence police learned about the FBI investigation and obtained two warrants for cell phone records for the number that the FBI agents had obtained from defendant's employer. From those records, the Independence police were able to identify the numbers most associated with that cell phone number, which, in turn, allowed them to locate defendant. Defendant was arrested in Texas on December 19, 2018, by U.S. Marshals and extradited to Oregon. He was arraigned in March of 2019, and, in July of that year, defendant moved to dismiss the indictment on speedy trial grounds.

In support of his motion, defendant relied upon Article I, section 10, of the Oregon Constitution, which provides, in part, that "justice shall be administered *** without delay[.]" He also relied upon the Sixth Amendment to the United States Constitution, which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The trial court's order of dismissal refers to a violation of "[d]efendant's State and Federal Constitutional Rights to Speedy Trial," but neither the written order nor the court's oral ruling provides an independent federal analysis. Defendant acknowledges that his arguments and the trial court's reasoning under each

constitutional provision were "the same." We, therefore, restrict our review to the state constitutional arguments that defendant presented to the trial court and that the parties briefed on appeal.

Defendant argued that the nine-year delay between the issuance of the indictment in 2009 and his arrest in 2018 was excessive and that it was attributable to the state because the police could have done more to locate him. The trial court found that there was conclusive evidence that defendant had "skipped town" to "avoid prosecution" and that he was "a man in flight." However, the court also agreed with defendant that the delay was for a "long period of time," and the court attributed that delay to the state. The trial court found that the police could have located defendant sooner if they had attempted to check additional sources of information such as real property, social security, and passport records. They could have searched for defendant's wife's driver's license records and his children's school records. The court found that the state could have questioned members of defendant's family beyond the alleged victim and her immediate family. The court then concluded that the state "didn't do any of that in their investigation," and it reasoned that, because the state's investigative efforts in 2018 resulted in defendant's arrest, "the proof is in the pudding that had they used some diligence in the beginning they probably would have found [defendant] very quickly."

In regard to potential prejudice to defendant, the trial court heard testimony from one of the original investigating law enforcement officers who testified that her memory of the investigation had faded. The court also heard testimony from defendant's expert who explained that long delays generally tend to affect memory. Although the court did not find the expert's testimony to be particularly helpful, it concluded that defendant had been prejudiced by the delay because "everybody knows what ten years does to [a witness's] memory." When pressed by counsel, the court clarified that the only basis for its finding of prejudice was the "lapse of time."

Article I, section 10, requires the state to bring a defendant to trial "without delay." *State v. Harberts*, 331 Or

72, 88, 11 P3d 641 (2000). Whether the state did so requires a fact-specific inquiry into the circumstances of the case. *Id*. The trial court's inquiry begins with considering the length of the delay itself. When the amount of time that has passed is so long that ordering a defendant to proceed to trial "shocks the imagination and the conscience," *State v. Vawter*, 236 Or 85, 96, 386 P2d 915 (1963) (quoting *U.S. v. Chase*, 135 F Supp 230, 233 (N.D. Ill. 1955), the delay is presumptively prejudicial. *State v. Chinn*, 115 Or App 662, 665, 840 P2d 92 (1992). When the length of the delay falls short of shocking but is nevertheless significantly longer than average, then the court must consider the reasons for the delay and whether the defendant has established any prejudice resulting from the delay. *State v. Chelemedos*, 286 Or App 77, 81, 398 P3d 415, *rev den*, 362 Or 208 (2017).

The length of the delay here—nine years—was very long. Defendant does not argue that the nine-year delay was a *per se* violation of the state's obligation to bring him to trial without delay. But, as the state acknowledges, the delay between indictment and trial was "substantially greater than average." We agree that it was a significant delay and that the delay, therefore, triggered inquiry into the reasons for the delay and any resulting prejudice to defendant.

This case turns on the reason for the nine-year delay. It is undisputed that the lengthy delay was due to defendant fleeing the state to avoid prosecution. Generally, "[d]elays caused by a defendant's evasion of law enforcement" are deemed reasonable and do not weigh in favor of dismissal. *State v. Berrellez*, 266 Or App 381, 385, 337 P3d 964 (2014), *rev den*, 356 Or 689 (2015). *Berrellez* concerned an eight-year gap between indictment and trial. *Id*. at 382-83. Like the case before us, the defendant in *Berrellez* disappeared when he learned of the accusation against him, a warrant for his arrest was entered into LEDS, and he was not located by the police until eight years later. *Id*. The defendant sought dismissal on both statutory and constitutional speedy trial grounds, which the trial court denied.

We examined the trial court's decision concerning the reasonableness of the delay using a two-step process.

*Id.* at 384.[1] The first step is to "'determine the relevant amount of delay by subtracting from the total delay any periods of delay that defendant requested or consented to.'" *Id.* (quoting *State v. Glushko/Little*, 351 Or 297, 266 P3d 50 (2011)). However, we concluded that the first step was not relevant in *Berrellez* because defendant had not *consented* to the delay. *Id.* The second step is to examine whether the delay was reasonable "given the totality of the circumstances" by making a record-specific inquiry. *Id.* In the second step, we considered the entire eight-year delay and concluded that it was reasonable because the defendant had *caused* that delay by evading law enforcement. We concluded that the trial court had not erred in denying his motion to dismiss on speedy trial grounds, because, like the case before us, the evidence in *Berrellez* established that the defendant had fled from justice twice; that law enforcement had entered the warrant into LEDS; and that the police had had no information as to the defendant's location until his arrest. *Id.* at 385.

As in *Berrellez*, although defendant fled to avoid prosecution, he did not expressly consent to a delay of nine years between issuance of the indictment and the eventual trial. Given the lack of consent to a delayed trial, the trial court—both here and in *Berrellez*—correctly considered the circumstances of the entire period of delay in assessing the reasonableness of the delay. In reviewing the trial court's reasonableness analysis here, we are mindful that, in general, "'[d]elays, due to the defendant's fault, as, for instance, his absence from the state in order to escape trial, afford no basis for dismissal of the charge'" on speedy trial grounds. *Glushko/Little*, 351 Or at 309 (quoting *State v. Swain*, 147 Or 207, 214, 31 P2d 745 (1934)).

The delay began in 2009 when defendant learned that he was being investigated for rape. At that time, he told the police that he would show up for a polygraph examination, but he instead left town in the middle of the night. The police entered warrant information into LEDS and

---

[1] We have long assessed the "reasonableness" of delay in statutory and state constitutional speedy trial cases by the same general method because Oregon's former speedy trial statute was intended to "carry into effect" Article I, section 10. *State v. Swain*, 147 Or 207, 214, 31 P2d 745 (1934).

repeatedly followed up on the warrant to ensure that it remained active. The police asked defendant's family if they knew where defendant was, but they offered no leads. The delay continued and, in 2018, when law enforcement agents, acting on a tip, contacted defendant's wife in Texas, defendant once again fled. The Independence police then followed up and ultimately located defendant through cell phone records it had obtained through warrants.

The trial court correctly found that defendant had fled the state to avoid prosecution. But its conclusion that the nine-year delay from indictment to trial was unreasonable is based on the speculative factual finding that if the state had done more, then it would have located defendant sooner. The record does not support that conclusion or that finding, especially given the evidence that defendant actively concealed his whereabouts from the state. We know of no principled reason to measure the reasonableness of the state's prosecutorial efforts by the level of success that defendant achieves in evading those efforts.

This is not a case like *State v. Rohlfing*, 155 Or App 127, 963 P2d 87 (1998), where we held that an eight-year delay was unreasonable. In that case, there was no evidence that the defendant had moved out of state to avoid arrest. *Id.* at 132-33. The state did not attempt to reach defendant by telephone, and it did not enter the warrant into LEDS. *Id.* at 133. The state's lack of effort in *Rohlfing* weighed against it on the question of whether the delay was reasonable. *Id.* Here, by contrast, the police promptly contacted defendant in 2009 and questioned him about the report that they had received. Defendant agreed to take a polygraph test, but he did not appear for that, and, when the police returned for more discussion, they discovered that defendant was no longer living or working where he had been when they first contacted him. The police issued a nationwide arrest warrant and entered it into LEDS, and they followed up on tips and information that finally led to defendant's arrest. The record reflects that the state did far more here than it did in *Rohlfing*. It also did more than was done in *Berrellez* where we concluded that an eight-year delay was reasonable. This case is more like *Berrellez* than *Rohlfing*—police efforts

were sufficient to avoid unreasonable delay on the part of the state.

Finally, after analyzing the length and reason for the delay, we consider whether there was a "reasonable possibility of prejudice to the defense." *State v. McDonnell*, 343 Or 557, 573-74, 176 P3d 1236 (2007) (quoting *Harberts*, 331 Or at 97). The speedy trial rule is designed to (1) protect against "'oppressive pretrial incarceration'"; (2) to minimize the accused's "'anxiety and concern'" due to pending criminal charges; and (3) to "'limit the possibility that the defense will be impaired.'" *Harberts*, 331 Or at 85 (quoting *Barker v. Wingo*, 407 US 514, 532, 92 S Ct 2182, 33 L Ed 2d 101 (1972)).

We focus on the prejudice found by the trial court—the impaired ability to defend at trial due to faded memories—which potentially implicates the third *Harberts* factor. Faded memories can, of course, cut both ways. And the fact that memories fade is a relevant consideration, but it does not, by itself, establish prejudice. The court found that defendant's ability to defend himself at trial was impaired by the nine-year delay and the "memory issues" that come with the passage of time. The court did not, however, identify any particular memories that had likely faded or how such memories would have aided the defense. Where, as here, "the value of unavailable evidence is only speculative, the unavailability of that evidence will not factor significantly in the analysis." *Johnson*, 342 Or at 608; *see State v. Tiner*, 340 Or 551, 558, 135 P3d 305 (2006) (loss of witness's unknown testimony insufficient to warrant dismissal). And the loss of any testimony here is directly related to defendant who caused the delay in the first place and who continued his efforts to avoid prosecution over the next nine years. The trial court assigned too much weight to the potential impact of faded memories on defendant's ability to defend himself, given that it was defendant who created the delay, none of which was attributable to the state.

Reversed and remanded.