Argued and submitted January 7, decision of Court of Appeals affirmed;
judgment of circuit court reversed August 4, 2005

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## MARTIN ALLEN JOHNSON,
*Respondent on Review.*

(CC CR9800590; CA A116313; SC S51591)

116 P3d 879

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General.

Susan F. Drake, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

GILLETTE, J.

**GILLETTE, J.**

This criminal case, arising out of defendant's conviction for third-degree rape, raises various issues relating to the proper interpretation and application of Oregon's statutory provisions respecting speedy trials, ORS 135.745 to 135.750. Pursuant to those statutes, and based on facts of this case, defendant moved to dismiss the charge in question. The trial court denied defendant's motion. Defendant then pleaded guilty, but reserved his speedy trial challenge. *See* ORS 135.335(3) (authorizing such a procedure). On defendant's appeal, the Court of Appeals reversed, holding that the state had failed to bring defendant to trial within a "reasonable period of time," as one of the speedy trial statutes, ORS 135.747, requires. *State v. Johnson*, 193 Or App 250, 90 P3d 4, *adh'd to on recons*, 194 Or App 28, 92 P3d 766 (2004). On review, the state argues that the Court of Appeals erroneously interpreted and applied the speedy trial statutes. The state also argues that the Court of Appeals employed an erroneous standard of review. We conclude that the state's arguments about the meaning and application of the statutes are not well taken and, accordingly, affirm.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts are as follows. In early 1998, defendant became aware of the fact that he was the target of a Washington County homicide investigation. He fled the state. Shortly thereafter, the police obtained evidence that defendant may have committed other crimes in a different venue, Clackamas County, in 1997. On the basis of that evidence, a Clackamas County grand jury indicted defendant on April 9, 1998, charging him with one count of third-degree rape and two counts of third-degree sexual abuse. Based on the Clackamas County indictment, a warrant for defendant's arrest issued four days later. In the meantime, the Washington County homicide investigation had continued, ultimately leading to an indictment against defendant in that county on a charge of aggravated murder.

Defendant eventually was apprehended in Florida. On March 4, 1999, the authorities returned defendant to

Oregon to face trial on the Washington County aggravated murder charge. Clackamas County put a "hold" on defendant with respect to the rape and sexual abuse charges around that same time,[1] but it did not serve defendant with the April 1998 arrest warrant or otherwise attempt to move the Clackamas County case forward.

According to defendant, he did not learn of the Clackamas County "hold" or the charges connected with it until November 2000—20 months after his return to Oregon.[2] At that time, he still was in jail in Washington County awaiting trial on the aggravated murder charge. On November 24, 2000, defendant filed a "Notice of Request for Early Trial" in Clackamas County Circuit Court. Clackamas County responded to that notice by serving defendant with an arrest warrant on December 20, 2000, arraigning him in circuit court on December 21, 2000, and setting the case for trial on February 9, 2001.

■ Defendant subsequently requested and obtained several postponements of the Clackamas County trial. He also filed a number of motions relating to his stated desire to represent himself. However, when the trial court inquired about defendant's willingness to waive his speedy trial rights for purposes of those requests and motions, defendant indicated, albeit somewhat inarticulately, that he did not wish to waive his rights with respect to the 21-month period between his return to Oregon and his arraignment in Clackamas County.[3] Eventually, defendant moved to dismiss the

---

[1] The *exact date of the so-called* "hold" *does not appear in this record.* Moreover, the nature of the "hold" is unclear. As the Court of Appeals noted, *Johnson,* 193 Or App at 252 n 1, there is no information or documentation in the record that explains precisely what was done respecting the Clackamas County charges, who did it, or by what authority. We note that, in future cases of this kind, a more complete record would be helpful.

[2] The state suggested in the Court of Appeals that defendant knew of the Clackamas County charges immediately on his return to Oregon. However, we agree with the Court of Appeals, *Johnson,* 193 Or App at 255, that the record does not establish that fact.

[3] The evidence suggests that at least some of defendant's requests and motions at the time were attempts to manipulate the system, raising doubts as to the sincerity of his speedy trial demand. The trial court apparently so viewed defendant's maneuvers. However, questions about the sincerity of defendant's post-arraignment demand for a speedy trial have no bearing on the question whether, at that time, the state already had violated defendant's statutory speedy trial rights by failing to proceed against him within a reasonable time after his return to Oregon.

Clackamas County charges on both constitutional and statutory speedy trial grounds. The trial court denied the motion, finding that "the delay in service of the arrest warrant [was] attributable to the defendant's absence from the state" and that there were no significant delays after defendant demanded a speedy trial other than delays that occurred at defendant's request. The trial court did not specifically address and assess the 21-month delay between defendant's return to Oregon and his arraignment. As noted, defendant thereafter pleaded guilty to the rape charge pursuant to a plea agreement that resulted in dismissal of the two sexual abuse charges and reserved defendant's right to challenge the trial court's speedy trial ruling on appeal.

On appeal, defendant challenged the denial of his speedy trial motion on statutory grounds only. In the course of that appeal, defendant acknowledged that the court could not hold the state responsible for the period before the authorities arrested him in Florida and returned him to Oregon. He argued, however, that the state was responsible for the period after he was returned to Oregon and during which Clackamas County failed to move the case forward. Defendant further argued that that 21-month delay was unreasonable and constituted grounds for dismissal under ORS 135.747, which mandates dismissal of an accusatory instrument when the state fails to bring a defendant to trial within a "reasonable period of time." The Court of Appeals agreed with defendant that the 21-month prearraignment delay was unreasonable and that, consequently, ORS 135.747 required the charges to be dismissed. It therefore reversed the trial court's denial of defendant's motion to dismiss and remanded the case to the trial court with instructions to dismiss the charges against defendant without prejudice. *Johnson*, 193 Or App at 257. We allowed the state's petition for review.

## II. DISCUSSION

Before turning to the state's arguments, we set out the statutory speedy trial provisions in their entirety. The first of those statutes is ORS 135.745, which is implicated only indirectly in the present case. That statute provides:

"When a person has been held to answer for a crime, if an indictment is not found against the person within 30 days or the district attorney does not file an information in circuit court within 30 days after the person is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown."

ORS 135.747, the statute that defendant cited in his motion to dismiss, provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

ORS 135.750 then provides:

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may release the defendant from custody as provided in ORS 135.230 to 135.290, for the appearance of the defendant to answer the charge or action."

Finally, ORS 135.753(2) provides that an order of dismissal pursuant to ORS 135.745 or ORS 135.747

"is a bar to another prosecution for the same crime if the crime is a Class B or C misdemeanor; but it is not a bar if the crime charged is a Class A misdemeanor or a felony."[4]

Before this court, the state contends that the Court of Appeals decision to reverse the trial court's denial of defendant's motion to dismiss on statutory speedy trial grounds arose out of an erroneous interpretation and application of ORS 135.747. We address each of the state's arguments below.

A. *Standard of Review*

■ The state argues, first, that the Court of Appeals applied an erroneous standard of review under ORS 135.747 by treating the trial court's decision not to dismiss the case against defendant as a question of law when, by statute, that

---

[4] Third-degree rape is a Class C felony. ORS 163.355(2).

decision is committed to the sound discretion of the trial court. The state argues, in that regard, that ORS 135.747 must be read in tandem with ORS 135.750. The state then points to the discretionary wording of ORS 135.750—"the court *may* order the action to be continued"—as evidence that the legislature intended to "grant a wide range of discretion as to a trial court's determination of both reasonableness and remedy for delay."

■     The state's argument presents an issue of statutory construction, to be considered under the paradigm set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). That paradigm requires us to look first at the text and context of the statute and to proceed to other interpretive sources only if the statute under examination remains ambiguous. *Id.* at 611. We turn, first, to the relevant text.

It is undebatable that ORS 135.747 and ORS 135.750 must be read together. The latter statute expressly refers to the former and appears on its face to confer some authority on the trial court to continue an action in spite of the requirement in ORS 135.747 that the court dismiss a charge when the state fails to bring the defendant to trial within a reasonable time. As noted, the state emphasizes the fact that ORS 135.750 contains wording that connotes discretion—"*may* order the action to be continued" (emphasis added)—and argues that that discretion extends to the "reasonableness" inquiry in ORS 135.747, as well as to the remedy for delay.

A close reading of the wording of ORS 135.750, however, does not bear out the state's claim that it embodies a broad grant of discretion. For example, the text of that statute reveals that, for ORS 135.750 to apply, it first must be true that a defendant has not been tried "as provided in * * * ORS 135.747[.]" In other words, for ORS 135.750 to apply, it first must be true that the state has failed to bring the defendant to trial "within a reasonable period of time" as ORS 135.747 requires. That reading of ORS 135.750 suggests that any discretion that the wording "may order" confers on the trial court cannot include discretion with respect to the question whether the delay described in ORS 135.747 was

"reasonable." Thus, the words of discretion in ORS 135.750 cannot be read to reach back and turn the predicate "reasonableness" determination that ORS 135.747 contemplates into a discretionary one.

Neither is the scope of the discretion that ORS 135.750 confers on the trial judge very broad. ORS 135.750 provides that, "if" the defendant was not tried in accordance with ORS 135.747 *and* "sufficient reason therefor is shown," then the trial court may order the action to be continued. That conditional framing shows that the "sufficient reason" requirement is a *precondition* for the trial court's exercise of discretion; it is not an *object* of that discretion. Put differently, the statute grants no more discretion to the trial court with respect to what qualifies as a "sufficient reason" than it does with respect to whether a given time period is "reasonable" under ORS 135.747.

Finally, we find it significant that ORS 135.750 requires that the "sufficient reason therefor" referred to in the statute be "shown." That wording indicates that, to the extent that the trial court determines that there is "sufficient reason" for a delay, such reason must, in one way or another, appear in the record. Such a requirement seems incompatible with the idea that the existence of "sufficient reason" is a matter of judicial discretion.

■ The foregoing points, which are based on purely textual analysis, strongly indicate that a trial court's discretion to continue an action under ORS 135.750 is limited. Specifically, the text indicates that a trial court *does* have some discretion to continue a case in spite of an unreasonable delay, but *only* if the trial court first determines, based on evidence that is before it, that there was sufficient reason for the failure to try the defendant within a reasonable period of time.

We acknowledge, however, that the foregoing textual analysis leaves out any consideration of other contextual information that the state contends is relevant at this level, including information about the historical evolution of the statutes and the cases applying older versions of the statutes. Moreover, a purely textual reading of the statutes raises some difficult questions about the intended operation of the statutes as a whole. When read together, the statutes have a

circular quality that suggests to us that some earlier meaning has been lost. In particular, it seems inescapable that any determination of a "reasonable period of time" for bringing a defendant to trial, as described in ORS 135.747, would involve some examination of the reasons for any delay. And, if that is so, as logic suggests that it should be, then the intent behind the requirement in ORS 135.750 that "sufficient reason therefor [be] shown" becomes difficult to discern. In such circumstances, the historical evolution of the statutes and the case law not only provide context for determining whether and to what extent ORS 135.747 and ORS 135.750 imbue trial courts with discretion, but also provide insight into understanding the intended collective operation of the statutes.

We turn then, to the state's argument that certain contextual clues—in particular, the historical evolution of the statutes and the cases interpreting them—establish that the legislature intended to imbue trial courts with very broad discretion in deciding motions brought on statutory speedy trial grounds. We first examine the historical evolution of the statutes.

The earliest version of the speedy trial statutes appeared in chapter XXX of the original 1864 Criminal Code. At the time of the enactment of those early statutes, the state's trial courts did not sit continuously, as they do today. Instead, the courts sat in "terms," which, at least initially, were determined by the comings and goings of circuit-riding judges. Thus, the earliest versions of the statutes at issue here all employed the concept of "term of court" to describe what the statutes required:

"§ 319.   When a person has been held to answer for a crime, if an indictment be not found against him *at the next term of the court* at which he is held to answer, the court must order the prosecution to be dismissed unless good cause to the contrary be shown.

"§ 320.   If a defendant, indicted for a crime, whose trial has not been postponed upon his application or by his consent, be not brought to trial *at the next term of the court* in which the indictment is triable, after it is found, the court

must order the indictment to be dismissed, unless good cause to the contrary be shown.

"§ 321.   If the defendant be not indicted or tried, as provided in the last two sections, and sufficient reason therefor be shown, the court may order the action to be continued *from term to term*, and in the meantime may discharge the defendant from custody, on his own undertaking of bail, for his appearance to answer the charge or action at the time to which the same is continued."

General Laws of Oregon, Crim Code, ch XXX, §§ 319-321, p 382 (Deady 1845-1864) (emphasis added).

Under those original statutes, the trial court's decision to dismiss or to continue an action was a *prospective* one that was made at the end of a term of court and, so far as we can tell, without any necessity of a motion by the defendant. Indeed, it is entirely possible to interpret the early versions of the speedy trial statutes as mere directions to trial courts about clearing their dockets, rather than as conferring any particular rights on criminal defendants. However, the statutes long have been understood to confer on criminal defendants a right to dismissal, which could be raised at a later term by a motion for dismissal. *See, e.g., Johnston v. Circuit Court, Mult. Co.*, 140 Or 100, 106, 12 P2d 1027 (1932) ("petitioners have not shown * * * facts sufficient to bring them within the statute entitling them to dismissal of the indictment"). That reading of the statutes may have resulted from the fact that the statutes were associated, fairly early on, with the constitutional speedy trial guarantee. *See, e.g., State v. Breaw*, 45 Or 586, 587, 78 P 896 (1904) (stating that then-extant version of section 320 was intended to preserve speedy trial right guaranteed by Article I, section 10, of Oregon Constitution).

Notably, the early versions of the statutes do not suffer from the same circularity that we have noted in their present versions. For one thing, the phrasing used in the first clause of section 321 ("[i]f a defendant be not *indicted* or *tried*, as provided in the last two sections") is more closely aligned with the terminology of the referenced statutes ("if an *indictment* be not found against him"; "[i]f a defendant * * * be not *brought to trial*") (all emphasis added). Also, strikingly, the

phrase "sufficient reason therefor be shown" in section 321 seems to be a direct reference to the phrase "unless good cause to the contrary be shown" that appears in the preceding two sections. Both phrases seem to refer to good or sufficient reasons *not* to dismiss the prosecution or indictment. In general, that overlap suggests that the two statutes at that time did not involve separate inquiries but, instead, the inquiry under section 321 merely repeated and expanded upon the inquiries under sections 319 and 320. Specifically, the first two clauses of section 321 appear to recap the directives of the foregoing sections (dismissal of prosecution or indictment required unless good cause for *not* dismissing is shown), while the remainder of the statute provides a more detailed description of the consequence of a "good cause" or "sufficient reason" showing. And, because that consequence is framed conditionally, it seems clear that the trial court's discretion to choose between dismissing and continuing an action that the state has not prosecuted timely exists only *after* the state has shown "sufficient reason" for not dismissing.

The cases interpreting and applying the early speedy trial statutes neither confirm nor contradict the foregoing view about how the statutes operated together. In fact, the early cases seem to ignore section 321 altogether, focusing solely on the mandate and "good cause" exception as set out in section 320. *See, e.g.*, *State v. Goldstein*, 111 Or 221, 224 P 1087 (1924), (referring only to "good cause" wording of section 320); *State v. Lee*, 110 Or 682, 224 P 627 (1924) (same); *State v. Bateham*, 94 Or 524, 186 P 5 (1919) (same). However, if we are to make sense of section 321 at all, we think that it must be read in the way that we have described.

In any event, the foregoing three provisions remained in the criminal code, occasionally renumbered but essentially unchanged in substance, for almost 100 years. By 1959, however, the state's trial courts no longer scheduled their work according to "terms" of court, and the legislature moved to eliminate references to scheduling cases by "terms" from the state's statutes. In a single statute, Oregon Laws 1959, chapter 638, the legislature removed such references from more than 20 provisions of the civil and criminal codes and replaced them with other definite or indefinite deadlines

and time periods. Sections 319, 320, and 321 of the 1864 Deady Code—which were by that time denominated, respectively, as ORS 134.110, ORS 134.120, and ORS 134.130—all were amended by that act.

*Former* ORS 134.110 (1959), originally section 319, was amended to provide for indictment within 60 days instead of "at the next term." *Former* ORS 134.130 (1959), originally section 321, was amended to remove the descriptive phrase "from term to term." And, of particular significance here, *former* ORS 134.120 (1959), originally section 320, was amended by removing the words "unless good cause to the contrary is shown" and by requiring that a charged defendant be tried within a "reasonable period of time."[5]

Given the context in which the changes to *former* ORS 134.120 (1959), originally section 320, occurred, the choice to replace the phrase "next term of court" with the phrase "reasonable period of time" is unremarkable. Presumably, the legislature had the idea that, in that particular context, an indefinite but objectively rational time period was more appropriate than a definite one. Beyond that, there is no reason to believe that the 1959 legislature was imparting any particular content to the term "reasonable."

On the other hand, the legislature's choice to remove the final phrase of *former* ORS 134.120 (1959)—"unless good cause to the contrary is shown"—is enigmatic. We can only guess that the legislature removed the "good cause" phrase because that phrase was unnecessary, in light of the added "reasonable period of time" phrase in the same statute and

---

[5] The resulting amended 1959 statutes provided:

"134.110. When a person has been held to answer for a crime, if an indictment is not found against him within 60 days after the person is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown.

"134.120. If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the indictment to be dismissed.

"134.130. If the defendant is not indicted or tried, as provided in ORS 134.110 and 134.120, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may discharge the defendant from custody on his own undertaking of bail for his appearance to answer the charge or action at the time to which the same is continued."

the "sufficient reason" phrase in *former* ORS 134.130 (1959), originally section 321.[6] In any event, we find nothing in the removal of the "good cause" phrase that would suggest an intent to change the general operation of *former* ORS 134.120 (1959), either by itself or in combination with *former* ORS 134.130 (1959).[7] Throughout, the conditional framing of the clause that conveys discretion—"may order the action to be continued"—has remained the same. Thus, we are persuaded that, after the amendments, as before, *former* ORS 134.120 (1959) and *former* ORS 134.130 (1959) *mandated* that trial courts dismiss an indictment that the state did not timely prosecute, unless the state showed good or sufficient reason for *not* dismissing, in which case the trial court had discretion to continue the action.[8]

Although the foregoing historical exercise has altered our view somewhat of the overall intended operation of the speedy trial statutes,[9] it has not altered our original view that, for the most part, the court must decide the issues that arise under those statutes as a matter of fact and law,

---

[6] Shortly after the amendments were adopted, this court stated that, in light of the new "reasonable period" phrase, the removal of the "good cause" phrase was "without significance." *State v. Jackson*, 228 Or 371, 377, 365 P2d 294 (1961). That was so, in the court's view, because "the question of reasonable time cannot be determined without inquiring into the question whether there was good cause for delay." *Id.*

[7] As we have noted, the legislature's clear overall purpose in enacting the amendments was to remove references to term-based scheduling. There is no hint anywhere in the statute that the legislature had any other purpose in mind.

[8] None of the subsequent amendments to the statutory scheme imply an intent to alter that basic operation. In 1971, the legislature amended ORS 134.110 to shorten the time period that a defendant may be "held to answer" prior to indictment to 30 days. Or Laws 1971, ch 286, § 1. That amendment clearly had no effect on the overall operation of the speedy trial statutes.

In 1973, the legislature amended all three statutes to their present form, as part of a major overhaul of the code of criminal procedure. Or Laws 1973, ch 836, § 204. In general, the changes sought to take into account the possibility of charging a defendant by information, rather than indictment. Thus, in ORS 135.747, the legislature replaced the term "indicted" with "charged" and the term "indictment" with "accusatory instrument." Similarly, in ORS 135.750, the legislature replaced the phrase "indicted or tried" with "proceeded against or tried." It is clear that, in enacting those changes, the legislature did not intend to alter in any way the operation of the statutes as described above.

[9] In particular, it demonstrates that, when ORS 135.750 states that, if "sufficient reason *therefor* is shown," it is referring to sufficient reason *not* to dismiss the indictment, rather than sufficient reason for an otherwise unreasonable delay.

rather than discretion. In particular, it confirms our view that a trial court's discretion arises only after the court has determined that the state has shown "good cause" or a "sufficient reason" for not dismissing the action, in spite of what otherwise would be an unreasonable delay. Our examination of the historical evolution of the statutes shows that the words conferring discretion in ORS 135.750—"may order the action to be continued"—are and always have been subject to a condition, that is, the existence in fact of good or sufficient cause *not* to dismiss.

The state contends far more, however. It asserts that this court's early cases reveal that this court viewed the "good cause" determination *itself* to be a matter of judicial discretion. It is true that the pre-1959 cases often *do* describe the determination of "good cause" under the earliest version of ORS 135.747, and the overall choice between dismissing or continuing an action, as being ones that are committed to the discretion of the trial court. *See, e.g., Lee*, 110 Or at 687 (describing question of whether to grant a continuance as "vested by law in the trial court"); *Bateham*, 94 Or at 529 ("the case made by the state of 'good cause to the contrary' appeals largely to the discretion of the trial court"). However, the relevance of those statements is weakened considerably by the fact that none of the early cases cite or even acknowledge the existence of former section 321.

In fact, it may be that the early idea of trial court discretion in this matter derived in part from this court's failure to consider *former* section 321 at that time. It is, after all, the wording of *former* section 321 (and its present-day equivalent, ORS 135.750) that describes the discretion of trial courts to continue an action in this context, clearly limiting that discretion to circumstances in which the court already has made a legal determination of "sufficient cause." However, in many of its early cases, this court appeared to treat the "good cause" exception in former section 320 as if it appeared in a vacuum and simply posited, without explanation, that abuse of discretion standard applied. *See, e.g., Lee*, 110 Or at 687 (applying that analysis). Perhaps even more importantly, it appears that, in at least some of those cases, this court simply was applying the standard for reviewing general trial court orders to continue or postpone trials. *See*

*id.* (reasoning that "good cause" was shown by general trial court order continuing all cases until succeeding term that was order within general discretion of trial court).

As the foregoing discussion suggests, in many of its early cases, this court often used the terms "discretion" and "abuse of discretion" imprecisely to describe the deference that appellate courts ordinarily extend to trial courts with regard to issues of fact. Thus, with regard to the perennial issue of whether a congested trial court docket qualified as "good cause to the contrary," this court has been deferential to trial courts' determinations that their dockets *in fact* were too overburdened and described the review of such facts in terms of "discretion." In *Bateham*, for example, the court apparently referred to a *legal* determination in noting that it had lately decided in *State v. Bertschinger*, 93 Or 404, 177 P 63 (1919), that "an accumulation of undetermined cases is sufficient to prevent discharge of the defendant." *Bateham*, 94 Or at 527. The court then stated that defendant should have met the state's factual showing that the court's docket was full with evidence to the contrary, such as sworn statements disclosing that there were times during the term when the trial court could have heard the case. The court concluded by stating that "[t]he case made by the state of 'good cause to the contrary' appeals largely to the discretion of the trial court." *Id.* However, viewed in that context, the court's reference to "discretion" appears to be a comment about deference to the trial court's apparent *factual* finding that there had been no opportunity to hear defendant's case because of an overcrowded docket.

Similarly, in *State v. Barrett*, 121 Or 57, 59, 254 P 198 (1927), the court explained that it had affirmed the trial court's denial of a speedy trial motion because of deference to that court's apparent finding that defendant had consented to postponement. In doing so, the court stated that, "[i]n passing upon motions preliminary to trial *where questions of fact are involved*, the trial court is in a better position to determine the fact than an appellate court, and for that reason, such questions of fact are not open for review upon appeal, unless the error is palpable and there has been a *clear abuse of discretion.*" *Id.* at 59-60 (emphasis added).

Although the statements about "discretion" and "abuse of discretion" in *Barrett* and *Bateham* related to reviewing determinations of disputed facts, some later cases by this court were not so precise, citing *Barrett* and *Bateham* in a way that suggested that the "abuse of discretion" standard applied generally to the trial court's ultimate decision to dismiss or continue an action. For example, in *Johnston*, 140 Or at 104, this court cited *Barrett* for the following proposition:

> "This court will not review the trial court's finding that the indictment should not be dismissed, for the reason that the defendant consented to the postponement of the trial, or that there was good cause shown why the indictment should not be dismissed unless error is palpable and there has been a clear abuse of discretion."

Another illustrative case is *State of Oregon v. Kuhnhausen*, 201 Or 478, 266 P2d 698, 272 P2d 225 (1954). In that case, the defendant sought dismissal on speedy trial grounds because the trial court had continued her case until the next term after apparently setting civil cases ahead of the defendant's criminal prosecution. The trial court denied the defendant's motion and, in a split decision, this court affirmed. The majority acknowledged the desirability of trying criminal cases promptly, but explained that that consideration was only one of many factual matters that a trial court must evaluate in deciding whether "good cause" under *former* ORS 134.120 (1953) existed for not dismissing an indictment. *Id.* at 539. Ultimately, the majority treated the "good cause" determination under *former* ORS 134.120 (1953) as one within the trial court's discretion. *Id.* at 544.

In contrast to the majority opinion, however, the dissent went to great lengths to put the "abuse of discretion" terminology in its place. The dissent insisted that, contrary to the majority's view, the question of whether there existed "good cause" for purposes of *former* ORS 134.120 (1953) was one of law, not judicial discretion. The dissent acknowledged that various cases decided under *former* ORS 134.120 (1953) referred to judicial "discretion," but explained that those references pertained only when the determination of "good

cause" rested on issues of fact. Thus, the dissent distinguished the "discretionary," *i.e.*, factual, issues in *Bateham*, with the issue before the court in *Kuhnhausen*:

> "[In *Bateham*], the trial court, in passing upon the motion to dismiss, was required to consider and decide upon the facts. It is obvious that the facts set forth in the affidavits filed by the state, if accepted as true by the trial court, established 'good cause to the contrary.' In passing upon those facts as a preliminary to the order denying the dismissal, the trial court necessarily exercised a judicial discretion.
>
> *"But in the instant case, the facts are undisputed!* There are no conflicts in the evidence. It follows, therefore, that the only question for determination is whether those undisputed facts constitute 'good cause to the contrary *as a matter of law*. The finding of the trial court that they did constitute 'good cause' for the continuance beyond the statutory limit, *is a legal conclusion*; it is not a finding of fact based upon disputed testimony. Hence, in the light of the undisputed facts, no occasion arose for an exercise of judicial discretion."

*Kuhnhausen*, 201 Or at 569 (Tooze, J., dissenting) (emphasis in original). Elsewhere in its opinion, the *Kuhnhausen* dissent explained that "good cause" is a legal standard and does not call for an exercise of discretion. In that regard, the dissent invoked the definition of "discretion" that appeared in *State v. Lewis*, 113 Or 359, 230 P 543 (1924):

> " 'Discretion is the power exercised by courts to determine questions to which no strict rule of law is applicable, but which, from their nature and the circumstances of the case, are controlled by the personal judgment of the court. 1 Bouvier's Law Dict. P. 884. It cannot be exercised where a strict rule of law is applicable, as the term 'discretion' implies the absence of any such rule. Where there is a clearly defined and well-settled applicable rule of law, the courts are bound to enforce the rule, and discretion is at an end.' "

*Kuhnhausen*, 201 Or at 565 (Tooze, J., dissenting) (quoting *Lewis*, 113 Or at 364) (emphasis omitted). The dissent opined

that a "good cause" determination does not appeal to the personal judgment of a court, but instead involves a strict rule of law.

We agree with the foregoing discussion in the *Kuhnhausen* dissent—a discussion that the *Kuhnhausen* majority never really addressed, much less overcame. We acknowledge the temptation to treat indefinite terms like "good cause," "sufficient reason," and "reasonable period of time" as calling for a subjective determination and, thus, as invoking personal judgment. However, it is clear that, when such terms appear in a statutory context, they are focused on real, albeit sometimes difficult to discern, legal standards: the *legislature's* view of what is "good," "sufficient," or "reasonable." As such, in the absence of a factual dispute, a determination that "good cause" not to dismiss has been shown under *former* section 320 (or that "sufficient reason" not to dismiss has been shown under present-day ORS 135.750) invokes an objective standard and must be reviewed for legal error.[10] In no case would judicial *discretion* play any role in the "good cause" determination of *former* section 321. And, more importantly for our purposes, neither would it play any role in the "reasonable period of time" and "sufficient reason" determinations required by the present-day statutes.

For the foregoing reasons, we are unpersuaded that the cases cited by the state provide good authority for employing an "abuse of discretion" standard of review either with respect to the trial court's "reasonableness" determination under ORS 135.747 or its "sufficient reason" determination under ORS 135.750. Judicial discretion comes into play respecting the ultimate decision under ORS 135.750 whether to grant or deny a motion to dismiss, but it does so *only if* the trial court first has drawn a legal conclusion from factual findings that the state showed "sufficient reason" not to dismiss the action. Thus, the "abuse of discretion" standard applies when an appellate court is reviewing a trial court's decision under ORS 135.750 to continue an action in spite of an unreasonable delay, but *only if* the appellate court first

---

[10] Of course, any trial court decision as to a disputed issue of *fact* will be reviewed under a far more deferential standard.

has determined that the state showed "sufficient reason" in the trial court for overriding the mandate to dismiss in ORS 135.747 when a delay is unreasonable. In the present case, where the controversy clearly centered on whether the time until trial was "reasonable" and whether "sufficient reason" for continuing the action had been shown, there is no basis for applying an "abuse of discretion" standard. We reject the state's arguments to the contrary.

B.  *"Reasonable Period of Time" Under ORS 135.747 and "Sufficient Reason" to Continue Under ORS 135.750*

■     The state next asserts that the Court of Appeals erred in holding that the state had not brought defendant to trial within a "reasonable period of time" within the meaning of ORS 135.747. The state argues that the question whether a trial has occurred within a "reasonable period of time" necessarily includes consideration of whether there was "good cause" for any delay. The state contends that, in the present case, there *was* good cause for the 21-month delay in question, noting that defendant already was involved in a complex aggravated murder proceeding in Washington County. According to the state, it was "important" and in defendant's best interest to allow that more serious charge to proceed to trial first.

In its opinion, the Court of Appeals seemed to accept that "good cause" was part of the reasonableness analysis under ORS 135.747, but it did not accept the state's contention that there was good cause for the delay in the present case.[11] Defendant, however, argues that the causes for a delay are relevant under only ORS 135.750, because only that statute directs a trial court to consider whether the state has shown "sufficient reason" for a delay in deciding whether

---

[11] In rejecting the state's arguments that good cause existed for the 21-month delay, the Court of Appeals wrote:

"The first problem with that argument is that it was not advanced below and, consequently, the record is undeveloped in that regard. In particular, nothing in the factual record establishes that the Clackamas County prosecutor delayed serving defendant with the arrest warrant and bringing him to trial for that reason."

*Johnson*, 193 Or App at 256.

to continue an action that otherwise would be subject to mandatory dismissal.

Based on text alone, defendant's theory is plausible: ORS 135.747 nowhere defines the concept of a "reasonable period of time," and it is possible to read that phrase as focusing on only the superficial reasonableness of the time period and not involving any inquiry into the circumstances that might have caused any delays. However, this court has stated on various occasions that, for purposes of ORS 135.747, the question whether a time period is "reasonable" involves examination of all the attendant circumstances. *See, e.g., State v. Emery*, 318 Or 460, 467, 869 P2d 859 (1994); *State v. Jackson*, 228 Or 371, 377, 365 P2d 294 (1961) (both so stating). Circumstances that cause delay (that is, the reasons for delay) would appear to fall within that description. Thus, the court's cases establish that the causes for delay are a significant part of the "reasonableness" calculus. In fact, when there is a delay (that is, when the state takes longer than ordinarily would be expected to bring a defendant to trial on a given charge), the circumstances that cause the delay generally will determine whether the delay (and thus, the overall time period for bringing the defendant to trial) is reasonable.

Turning to the facts of the present case, we have little difficulty in concluding that the time period in question— 21 months to execute an arrest warrant issued on an indictment—is greater than would be expected.[12] As such, we must determine whether there was good reason for the delay, rendering the time period "reasonable."

The state argues that there was good cause for the delay because defendant was awaiting trial on a more serious charge in another county. The state notes that the trial court indisputably "would have known that aggravated murder trials are complex and time-consuming" and "could have concluded * * * that it was more important to allow defendant's more serious charges to proceed to trial first." However, as a

---

[12] Generally speaking, we would expect the police to execute such warrants within a matter of weeks, not months. We recognize, of course, that there are aspects of warrant service that are beyond the control of the police, the first and foremost being the ability of the police to locate the defendant. However, those are matters that can and should be presented as reasons for delay.

matter of law, that assertion is not an acceptable reason for the delay. As the Court of Appeals noted in its opinion, the state had no right to decide unilaterally that delay was necessary, and defendant's speedy trial rights thus could be waived, because it was "important" for defendant to deal with the aggravated murder charge first. *Johnson*, 193 Or App at 256.

The state also contends that the record demonstrates that defendant engaged in obstructionist tactics by absconding to avoid prosecution on the Washington County charge, by filing a stream of *pro se* motions of questionable merit, and by constantly changing his mind about whether he wished to be represented by appointed counsel. According to the state, that pattern supports the conclusion that the time period within which defendant was brought to trial was reasonable. The difficulty with that argument, however, is that defendant's tactics in no way explain the particular delay that is at issue here, that is, the 21-month period after authorities returned defendant to Oregon and before defendant was served and arraigned. Thus, even if obstructionist, defendant's actions are not relevant to the issue of the reasonableness of the delay in this case.

■     The state also suggests that the delay was reasonable in light of resource deficiencies in the Oregon state court system. Although that argument never was articulated in the trial court, the state suggests that "this court can and should presume that the trial court was fully aware of the status of its docket." We do not doubt that the trial court was aware of the status of its docket. Nothing in the present record, however, gives us any insight into the status of that docket. In any event, the condition of the *trial court's* docket cannot explain why the *state* took 21 months to bring defendant into court.

Ultimately, there is nothing in the record that supports the conclusion, or even the implication, that there was good cause for the 21-month delay in this case. In the absence of any explanation for such an extended delay, we must agree with the Court of Appeals that, as a matter of law, the state failed to bring defendant to trial within a "reasonable period of time" under ORS 135.747.

That conclusion, however, does not end our analysis. As discussed above, the historical evolution of the speedy trial statutes informs us that the legislature intended the trial court to have discretion under ORS 135.750 to continue a case, in spite of an unreasonable delay, if "sufficient reason therefor is shown." Although we have characterized that phrase as a legal standard, we have not discussed its meaning and limits.

The obvious question that arises with respect to such a phrase is "sufficient" in what respect? The statute itself contains no express clues about the answer to that question, and there is no recorded legislative history. Further, as discussed previously, this court's cases applying the speedy trial statutes appear to have ignored ORS 135.750 and its predecessors. In theory, this court's early cases involving the "good cause to the contrary" wording in the predecessor to ORS 135.747 would be relevant because, as we have discussed, the phrase "sufficient reason therefor" in the original statutes essentially referred to that "good cause" wording. Those cases contain examples of what represented "good cause to the contrary" from this court's perspective,[13] but provide no general rule.

In the absence of any other explanation of the phrase, we assume that the legislature intended a meaning consistent with its overall purpose in enacting the speedy trial statutes. We assume, in other words, that a "sufficient reason" not to dismiss is one that has some relevance to, and does not essentially undermine, the overall purpose of those statutes. Elsewhere, this court has described that purpose in terms of "provid[ing] a method for dismissing cases that are languishing in the criminal justice system without affecting the state's ability to reprosecute serious charges." *Emery*, 318 Or at 467. In that same context, this court has stated that the

---

[13] There are numerous cases stating that an overcrowded docket or, as the cases put it, an "accumulation of undetermined cases," may amount to good cause not to dismiss. *See, e.g., Bateham*, 94 Or at 528 (stating principle); *State v. German*, 163 Or 642, 645, 98 P2d 6 (1940) (same). According to *State v. Clark*, 86 Or 464, 473, 168 P 944 (1917) "good cause" existed to continue a prosecution to another term when a jury had been discharged after failing to reach a verdict. On the other hand, imprisonment on another charge apparently did not constitute good cause. *See State v. D'Autremont*, 212 Or 344, 349, 317 P2d 932 (1957) (so holding).

statutes provide a " 'housecleaning' mechanism triggered by the length of time that a particular case has been in the system, rather than by the effect of the delay on a particular defendant." *Id.*

In light of that statutory purpose, we conclude that none of the reasons that the state has offered in support of the trial court's decision amounts to "sufficient reason" not to dismiss. The state's first reason—the "importance" of trying a more serious charge against defendant first—seems merely to be an attempted usurpation of defendant's right to determine for himself whether he is willing to waive his speedy trial rights to that end. The state's second reason—that defendant engaged in obstructionist conduct—is irrelevant to the statutes' "housecleaning" purpose. That beneficial housecleaning purpose is in no way undermined if an irritating defendant, even one who is insincere about his desire for a speedy trial, is permitted to force the state to demonstrate its interest in prosecuting him by obtaining a new indictment. We also reject the state's third reason—limited judicial resources—because it has no factual basis in this record. We therefore conclude, as a matter of law, that no "sufficient reason" for refusing the mandate of ORS 135.747 was "shown" in the trial court.

C.  *Application of ORS 135.747 to Prearraignment Period*

■      The state next contends that the 21-month delay between defendant's indictment and his arraignment is not relevant under the speedy trial statutes. The state argues that ORS 135.747 is "silent" with respect to when the speedy trial clock begins to run, but that the statute's references to defendant's "application" for "postponement" suggest that that statute applies only after a court actually is in a position to schedule a trial or grant a postponement—in other words, after the court has arraigned the defendant. The state also argues that the placement of ORS 135.747 in chapter 135 of the criminal code—a chapter that is devoted to arraignment and pretrial matters that necessarily follow arraignment—supports the idea that the statute is directed only at post-arraignment delays. Finally, the state suggests that we should discount earlier cases expressly holding that the statutory speedy trial right begins at indictment, because those

cases are mere relics of the time when this court construed the speedy trial statute as implementing the constitutional speedy trial right. The state acknowledges that the *constitutional* speedy trial right begins at indictment, but argues that, given that the statutory and constitutional speedy trial analyses have now been separated in our jurisprudence, *see Emery*, 318 Or at 467-70 (illustrating point), the time periods covered by the two rights also can, and should, be disconnected.

To consider that argument, we again turn to the *PGE* analytical paradigm. At the text and context level of that paradigm, we conclude that, with respect to the issue of the temporal scope of the speedy trial right, the text of ORS 135.747 is at least strongly suggestive of the answer. Specifically, ORS 135.747 pertains "[i]f a defendant *charged with a crime* * * * is not brought to trial within a reasonable period of time." Presumably, that means that, once a defendant stands "charged with a crime," his or her trial must take place within a reasonable period of time. Although there may be room for debate with respect to the range of actions that the legislature intended by the term "charged," there can be little doubt that a defendant who has been indicted by a grand jury has been "charged with a crime" within the meaning of the statute.

As noted, the state argues that the wording of the second clause of ORS 135.747—"whose trial has not been postponed upon the application of the defendant or by the consent of the defendant"—suggests that the statute pertains to only the time period after arraignment when a defendant can apply for, and a trial court can grant, a postponement. However, that argument places undue emphasis on words that describe the *exception* to the rule, at the expense of the rule itself. The *rule* provides, rather clearly, that trial delay becomes an issue when a defendant is *charged*. The narrower compass of the exception to the rule is perfectly understandable given the fact that, until he or she has been arraigned, a defendant would have no basis for making the kinds of requests that the exception contemplates.

The state suggests that it is irrational to read ORS 135.747 as pertaining to a time when the trial court has had

no opportunity, and even lacks the jurisdiction, to schedule a trial. But that suggestion rests on the unsupported premise that ORS 135.747 is directed primarily at trial courts and is concerned primarily with trial scheduling. In that regard, we note that ORS 135.747 applies if criminal defendants are not "brought to trial" within a reasonable time. Although it is true that the prosecution always is constrained by the trial court's schedule, it is the prosecution, and not the trial court, that bears the primary responsibility for "bringing" a criminal defendant to trial. As such, there is nothing irrational about reading ORS 135.747 as applying at any time when the prosecutor has the power to move the case forward, including the period before arraignment but after the defendant stands "charged with a crime." We read the statute to operate that way.

D. *Availability of Remedy of Dismissal to Defendants Who Have Sought or Consented to Any Postponement*

■ The state finally argues that the remedy described in ORS 135.747 is not available *at all* to individuals like defendant who, at any time in the proceeding, have sought or consented to a postponement of trial. In support of that argument, the state notes that ORS 135.747 contains a restrictive clause—"whose trial has not been postponed upon the application of the defendant or by the consent of the defendant"— that necessarily refers to the subject of the last antecedent clause (that is, to a "defendant charged with a crime"). The state concludes that the statute *must* be read to exclude categorically from the statute's protections any defendant who ever has sought or consented to a delay, even if the defendant sought or consented to such a delay only after the reasonable time period that the statute contemplated already had run.

Looking at the text of ORS 135.747 solely as a grammatical exercise, the state's reading of the clause is a reasonable one. Against that permissible grammatical reading, however, stands both rationality and longstanding interpretation by this court. With respect to the first point, we cannot imagine what purpose would be served by a scheme that requires a defendant, in order to preserve his or her right to a remedy for the state's violation of the speedy trial statutes, to

94

object to *any* request for postponement by the state and to refrain from requesting *any* postponement on his or her own part, regardless of reason or necessity.

As to the latter consideration, we point first to the holding in *State v. Chadwick*, 150 Or 645, 47 P2d 232 (1935), that the defendant's requests for minor continuances did not bar the statutory remedy of dismissal when the trial court had failed to set the defendant's case for trial over two terms of court.[14] Twenty-four years later, in *State v. Crosby*, 217 Or 393, 405-06, 342 P2d 831 (1959), this court explained that a defendant's request for or consent to a postponement merely tolls the relevant speedy trial period.[15] Although this court essentially has followed that "tolling" approach since *Crosby*,[16] the legislature has not been moved to amend the relevant wording to specify that it intends a different approach.

In short, the state's interpretation of the statute, although plausible on a purely textual level, becomes implausible when viewed in the context of this court's case law and the general assumption that statutes are rational. We conclude that a defendant is not categorically barred from the protections that ORS 135.747 offers because a postponement of trial occurred with the defendant's consent or at the defendant's own instigation.

[14] *Chadwick* was concerned with the original speedy trial statute, which defined speedy trial in more definite terms than does the present statute, but which contained the identical exception for postponements that the defendant initiates or agrees to.

[15] *Crosby* also was decided under the original speedy trial statute, set out above. As such, the relevant speedy trial period was "the next term of court in which the indictment is triable." 217 Or at 395-96 (quoting then-applicable version of *former* ORS 134.120).

[16] For cases illustrating this point, see *Haynes v. Burks*, 290 Or 75, 619 P2d 632 (1980); *State v. Harrison*, 253 Or 489, 455 P2d 613 (1969); *State v. Robinson*, 217 Or 612, 343 P2d 886 (1959).

The state suggests that this court's cases are in conflict as to the meaning and application of the restrictive clause that is at issue. However, we see nothing in the cases that the state cites—*Jackson*, 228 Or 371, *D'Autremont*, 212 Or 344; *Johnston*, 140 Or 100, and *State v. Hedrick*, 233 Or 137, 377 P2d 325 (1962)—that indicates that this court ever applied the rule for which the state contends. At most, those cases show that the statutory remedy is unavailable for a particular delay when the defendant instigated or consented to *that* delay.

The state also argues that, even if a defendant is not categorically excluded from the statutory remedy of dismissal by requesting or consenting to any delay, he or she is excluded by the clear terms of the statute from a remedy for any delay to which he or she requests or consents. We agree with that assertion. The state, however, then suggests that that rule serves as a bar to dismissal in this case, because defendant here consented to the very 21-month delay that is at issue by failing to demand a trial when he knew that the charges were pending against him. That argument assumes that defendant knew about the Clackamas County charges all along—a factual assertion that has no support in the record. In addition, the state's consent theory runs contrary to the well-established principle that it is the state's obligation, and not the defendant's, to bring a defendant to trial within a reasonable period of time. *See, e.g., State v. Vawter*, 236 Or 85, 87, 386 P2d 915 (1963) (in Oregon, "it is not incumbent upon the accused to demand a trial or take affirmative action to enforce his right to a speedy trial").

The state also suggests that defendant impliedly waived his right to a remedy for the 21-month prearraignment delay by requesting continuances and filing a stream of dilatory motions *after* he was arraigned. However, we cannot view those actions as an implied waiver of defendant's right to a remedy for the *earlier* delay, particularly when defendant expressly, if somewhat inarticulately, reserved his speedy trial rights for the earlier delay whenever he sought a continuance.

## III. CONCLUSION

We reject each of the state's challenges to the Court of Appeals decision in the present case. We agree with that court that the state failed to bring defendant to trial "within a reasonable period of time" under ORS 135.747. We conclude, moreover, that no "sufficient reason" was shown in the trial court for overriding the mandate of dismissal in ORS 135.747. Accordingly, we conclude that the indictment against defendant should have been dismissed.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed.