Argued and submitted February 1, 2005; resubmitted en banc March 8, affirmed
March 22, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# THEODORE BRUNOE,
*Appellant.*

## MI-01-0241; A122770

131 P3d 743

John Henry Hingson III argued the cause and filed the brief for appellant.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman, Ortega, and Rosenblum Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010. He appeals that judgment, assigning error to the trial court's denial of his motion to dismiss on the ground that his statutory right to a speedy trial was violated, ORS 135.747. We review for errors of law, *State v. Johnson*, 339 Or 69, 74-87, 116 P3d 879 (2005), and affirm.

The relevant facts are procedural and, given the nature of the case, we set them out in some detail. Defendant was arrested on April 28, 2001, cited on May 10, 2001, arraigned on May 17, 2001, tried beginning on September 22, 2003, and convicted the next day. The period between the filing of the citation and commencement of trial was 865 days, approximately 2.4 years. The trial court deemed defendant responsible for all of the initial 531-day delay before October 12, 2002. On appeal, defendant argues that the trial court wrongly attributed to him responsibility for some of that 531-day period of delay. In its response, the state urges not only that the trial court correctly deemed defendant responsible for the initial delay period, but that much of the final 334-day period before trial should also be attributed to defendant.

The Supreme Court has construed Oregon's speedy trial statute in three recent decisions: *Johnson*; *State v. Davids*, 339 Or 96, 116 P3d 894 (2005); and *State v. Adams*, 339 Or 104, 116 P3d 898 (2005). In *Johnson*, the court explained that ORS 135.747[1] and ORS 135.750,[2] when read together, establish a two-step process for considering a

---

[1] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

[2] ORS 135.750 provides:

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may release the defendant from custody as provided in ORS 135.230 to 135.290, for the appearance of the defendant to answer the charge or action."

motion to dismiss based on an alleged speedy trial violation. 339 Or at 87-91. First, the court must determine if the length of delay before a defendant charged with a crime was brought to trial was reasonable. The reasonableness of that delay "involves an examination of all the attendant circumstances" that caused the delay, and not merely that the total delay exceeds the norm. *Id.* at 88; *see also Adams*, 339 Or at 110 (same). Second, if the court finds the delay to be unreasonable, it may nonetheless exercise its discretion to continue the case against a defendant, but only if there is sufficient reason to do so. ORS 135.750; *Johnson*, 339 Or at 90. A sufficient reason will have "some relevance to, and [will] not essentially undermine, the overall purpose" of the speedy trial statutes, that is, to ensure that cases do not languish in the criminal justice system. *Johnson*, 339 Or at 90.

In the course of its recent decisions, the Supreme Court established or reinforced several principles relevant to the present appeal. First, it is the state's duty to bring an accused to trial. Accordingly, an accused has no affirmative obligation to demand a speedy trial. *Id.* at 95. Second, a defendant will not be deemed to have consented to a postponement merely because he fails to object to a request for a postponement by the state or to a decision by the trial court to accommodate other judicial priorities. *Adams*, 339 Or at 109. Third, an overcrowded trial court docket can excuse some delay, *id.* at 111, but if the defendant contests the state's asserted justification, the state must establish from the record that a dearth of judicial resources led to the particular delay in question, *Johnson*, 339 Or at 89; *see also State v. Schneider*, 201 Or App 546, 553-56 120 P3d 16 (2005) (lack of judicial resources justified delay where such lack of resources was the express basis for trial court's decision to delay, and where the defendant, on appeal, failed to contest the adequacy of the record to support court's rationale). Moreover, at some point an additional trial court postponement will be found unreasonable, even where that delay is a function of scarce judicial resources. *Adams*, 339 Or at 111-12. Fourth, a defendant is not categorically excluded from the protection of the speedy trial statute merely because he has occasioned some of the total delay. *Johnson*, 339 Or at 94 ("[A] defendant's request for or consent to a postponement merely tolls the relevant speedy trial period.").

■ With those principles in mind, we turn to the postponements here to discern the amount of delay that was neither caused by defendant nor consented to by him. ORS 135.747. First, we deem the initial seven-day period between the state's filing of the citation on May 10 and defendant's arraignment on May 17, 2001, to be attributable to the state. The trial court included this period within the delay that it attributed to defendant, but without explanation; the state, moreover, has provided no argument for retention in defendant's column.[3] Therefore, that initial seven-day delay is attributable to the state. Next, we deem the 110-day period between defendant's arraignment and the originally scheduled September 4, 2001, trial date to be delay attributable to defendant, based on his concession in his brief to this court. The date of trial was later postponed by the trial court from September 4 to November 13, 2001, in order to hear and resolve nine pretrial motions filed by defendant. That 70-day delay therefore was occasioned by defendant. Twice thereafter defendant delayed the onset of trial, once with his consent for 119 days, from November 13, 2001 to March 12, 2002, and then again, for 37 days, to April 18, 2002, for the purpose of hearing several additional defense motions.

Next, we consider the 145-day period from April 18 to September 10, 2002. At the conclusion of the April 18 motions hearing, a new date was set for a two-day trial. The court initially offered trial dates commencing June 11, July 9, or August 13, but on each of those dates defendant's counsel had a scheduling conflict. Finally, September 10, 2002, was selected as a date that "worked" for all. In its brief to us, the state, following the trial court, characterizes the totality of this period as delay attributable to defendant. Defendant, on the other hand, claims that "at worst" he can be deemed to have consented to the delay only from June 11 to September 10. In particular, defendant argues that the period of delay from April 18 to June 11, 2002, should be charged to the state. On that, we must agree with defendant. Even if it were

---

[3] At oral argument, defendant faulted the trial court's selection of the May 10, 2001, date of citation as the starting point for calculating the period of delay, instead of the April 28, 2001, date of arrest. Use of the earlier date could add 12 days to the delay attributable to the state. We do not decide this matter because, in his brief, defendant expressly chose to count the period of delay from the date of citation filing.

reasonable to charge defendant with the entirety of the delay between June 11, the date of his counsel's first scheduling conflict, and September 10, 2002, the newly selected trial date, defendant was not responsible for the delay extending from the date of the motions hearing to the first trial date offered by the court. Defendant's calendaring conflicts tolled the period of delay from the date of his conflict, not before. *Johnson*, 339 Or at 94. We therefore attribute 54 days of this 145-day period to the state, and the remaining 91 days to defendant.

The September 10 trial date itself was later postponed to October 15, 2002, this time on the state's motion, after it learned that its witness was going be unavailable. In his brief, defendant agrees that he consented to this 35-day period of delay.

We turn, then, to the final 342-day period of pretrial delay, October 15, 2002 to September 22, 2003. The state, in its brief, asserts that this final period "*may* be attributable to the state" (emphasis added), but only if we conclude that the state was responsible for the series of delays that the state claims are more properly assignable to the trial court, as opposed to any failure by the prosecution to move the case forward. We have previously resolved, however, that for purposes of ORS 135.747, "the state" is a unitary political entity that includes the courts as well as the executive and legislative branches. *State v. Adams*, 193 Or App 469, 475, 89 P3d 1283 (2004), *aff'd*, 339 Or 104, 116 P3d 898 (2005).

The state also urges that defendant consented to portions of this final period, in particular the setovers from October 15, 2002 to February 10, 2003, and again to May 12, 2003. The state argues first that defendant's mere failure to object to those setovers should be deemed consent to them. That argument, too, has already been rejected by the Supreme Court. *Adams*, 339 Or at 109.

The state next asserts that defendant's oral agreement to the trial court's setovers constituted express consent. The record shows that defendant affirmatively told the trial court that its newly proposed trial date of February 10, 2003, "works," and similarly, when the court later proposed a new trial date of May 12, 2003, defendant responded, "[t]hat works." But defendant's February 10 response followed the

court's statement that "[w]e have another matter that has taken priority, and so we need to reset your trial." Read closely, then, defendant's statement merely acknowledges availability for trial on the suggested date. Similarly, on February 6, 2003, the court advised defendant that his case was "not primary for Monday, so we'll get you a new date." In fuller context, when defendant is asked by the court, "May 12th? Will that work?" his answer, "Let me check here. That works," must be taken to denote his availability on the particular date recommended by the court for setover of trial. In those circumstances, defendant was not consenting to trial postponement, but instead, given the court's predetermined decision to postpone, defendant was denoting his availability for one or another later trial date. Defendant's responses, in particular, conveyed no message that he waived any right that could be affected by the court's postponement. *See Adams*, 339 Or at 109 (a defendant's lack of objection to state's postponement request "conveys no message that [he] either joins in the motion or waives any rights that he has that are affected by the motion").

The state relies on *State v. Peterson*, 183 Or App 571, 574, 53 P3d 455 (2002), in support of its claim that, when defense counsel "expressly and affirmatively agree[d] to * * * later trial dates, defendant consented to those delays." We disagree that *Peterson* controls here. First, as noted above, the relevant circumstances reflected in the record weigh against treating defendant's responses to the trial court as consent. Second, defendant here—unlike the defendant in *Peterson*—specifically moved the court for a speedy trial before the court-initiated setovers. Although, as defendant points out, there is no requirement for a defendant to request a speedy trial, defendant clearly made his desire for a speedy trial known to both the state and the court. Defendant was not obliged to reassert his demand for a speedy trial on each occasion that the court deemed it necessary to set over trial to accommodate other priorities. *Johnson*, 339 Or at 93-94 ("[W]e cannot imagine what purpose would be served by a scheme that requires a defendant, in order to preserve his or her right to a remedy for the state's violation of the speedy trial statutes, to object to *any* request for postponement by the state and to refrain from requesting *any* postponement on his or her own part, regardless of reason or

necessity.") (Emphasis in original.) Moreover, the record supports no inference that defendant, in acceding to court-initiated postponements, either intended thereby to waive his statutory right to a speedy trial or functionally conveyed any such message to the court. Accordingly, we conclude that defendant, in responding to the trial court's availability questions, did not waive his statutory right to a speedy trial.

We pause here to note that defendant agrees that 27 days of the final period should be attributable to him, because at an October 10, 2002, trial readiness hearing, defendant chose the later of two new dates offered for trial. Accordingly, we deem only 315 days, or 10.5 months of the final period of delay, to be delay attributable to the state. In conjunction with our prior apportionment first of an additional seven days, and then an additional 54 days, to the state, we find the state responsible for a total of 376 days, or nearly 12.4 months, of delay in bringing defendant to trial.

A delay of that length lies beyond the outer edge of our aspirational standards for bringing misdemeanor actions to a conclusion. Under the Standards of Timely Disposition, adopted by the Oregon Judicial Department, "90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated * * * within 90 days from the date of arraignment, 98% within 180 days and 100% within one year, except for exceptional cases in which continuing review should occur." (Internal quotation marks omitted.) *State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994); *State v. Harman*, 179 Or App 611, 623, 40 P3d 1079 (2002). The period of delay in this case, however, is *less* than the two-year period that the court in *Adams* found to be "beyond the reasonable time for bringing to trial a defendant whom the state already has charged with DUII." 339 Or at 112. We therefore proceed to determine whether the delay attributable to the state was reasonable by examining the reasons for that delay.

The state suggests that resource limitations drove the trial court to postpone trial several times. The state notes that difficult budget decisions by the state legislature, during the period under consideration here, had forced state trial courts to operate on restricted budgets and that, in consequence, the Supreme Court had ordered state trial courts to

defer processing certain types of cases, including "non-person misdemeanor cases," for four months starting in March 2003. The state maintains that "[t]he trial court in this case *appears* to have engaged in the same type of case and resource prioritization that the Supreme Court itself later ordered." (Emphasis added.) However, the state fails to point to record evidence that would lead us to presume what it suggests, namely that those legislative decisions resulted in resource limitations in response to which the trial court was required to postpone defendant's trial at any of several junctures over the period at issue.

Unlike in *Schneider*, the trial court here did not expressly cite an unavailability of judges as the basis for its postponements of defendant's trial. *See Schneider*, 201 Or App at 555. Rather, the court noted that the setovers "were the product of the court following the docketing management procedures" that prioritize cases by virtue of the allegations involved. Importantly, the trial court did not state that its docketing procedures, case prioritization practices, or trial availability dates had been altered to compensate for recent state budgetary strictures, and we will not presume that budget-driven alterations in those procedures compelled the court to initiate the postponements that form the predicate for defendant's claimed speedy trial right violation.

The state advances three additional arguments aimed at limiting the importance that we might otherwise attach to the delay attributable to it. First, it urges that ORS 135.747 should be interpreted to bar any defendant who occasions or consents to any period of delay prior to trial from asserting a violation of the speedy trial statute. However, as already noted, that argument has been rejected by the Supreme Court. *Johnson*, 339 Or at 93-94. Second, the state urges that defendant caused the "majority" of delay, and that we should take account of that fact in evaluating whether, under the totality of the circumstances, the delay was reasonable. However, we have previously found the state to have violated the statutory speedy trial requirement where a defendant consented to or occasioned a majority of pretrial delay, *Harman*, 179 Or App at 622-23, and we see no need here to establish a rule that when a defendant has consented

to or occasioned a majority of the period of delay to trial, he must be deemed to have consented to all of it.

The state finally attempts to shift to defendant responsibility for the trial court's setovers because, had defendant "brought his concerns about delay of trial to the court's attention earlier, the court may have been able to adjust the trial schedule." That statement itself, however, is in conflict with the state's entire argument above, that court-initiated setovers were necessitated by other priorities. If the court truly had no choice but to postpone defendant's trial, then defendant's renewal of his demand for a speedy trial would have been futile. Moreover, defendant previously had placed the trial court on notice of his desire for a speedy trial. Imposing on him an obligation to repeatedly renew his demand for a speedy trial would be contrary to "the well-established principle that it is the state's obligation, and not the defendant's, to bring a defendant to trial within a reasonable period of time." *Johnson*, 339 Or at 95.

In sum, we conclude that the total period of more than 12 months' delay attributable to the state was not "reasonable" pursuant to ORS 135.747. The only remaining question, then, is whether, despite the unreasonable delay, the court nonetheless properly exercised its discretion to continue the case pursuant to ORS 135.750 rather than to dismiss it. *See Johnson*, 339 Or at 75-76 (describing application of ORS 135.750 as a second step in the analysis). The court in *Johnson* stated that "a trial court *does* have some discretion to continue a case in spite of an unreasonable delay, but *only* if the trial court first determines, based on evidence that is before it, that there was sufficient reason for the failure to try the defendant within a reasonable time." *Id.* at 76 (emphasis in original). That discretion, however, is not "very broad." *Id.* That is, the court may exercise that discretion only if it finds "the existence in fact of good or sufficient cause *not* to dismiss." *Id.* at 82. A sufficient reason is one that has "some relevance to, and does not essentially undermine, the overall purpose of" ORS 137.747 and ORS 137.750. *Johnson*, 339 Or at 90.

Here, although the trial court made its decision before the court in *Johnson* set forth the above-described test

for the inquiry under ORS 137.750, we believe that the trial court's findings support a conclusion that it found sufficient cause not to dismiss and that it properly exercised its discretion to continue the case pursuant to ORS 137.750.

In a lengthy letter opinion, the trial court took judicial notice of its scheduling procedures, as well as the schedules in various cases pending at the time this case was pending in the trial court. In particular, the court described the practice of docketing multiple trials to commence on the same date. A number of the cases invariably settled, and the court would then prioritize the remaining cases by "balancing a mix of statutory priorities, administrative needs, case age and trying to achieve the most efficient use of judicial and litigant resources." As noted above, the present case was scheduled for October 10, 2002, for February 6, 2003, and for May 8, 2003, before finally being tried on September 22, 2003. On the first three of those dates, other cases were given higher priority: On October 10, 2002, an older civil case in which several judges were disqualified was tried; and on February 6, 2003, a felony case involving a minor victim was tried; on May 8, 2003, another felony case involving a minor victim was tried. The trial court explained in its letter opinion that, in the felony cases, the defendants were in custody and child witnesses were involved. The legislature has provided, in ORS 44.545, that a case involving child witnesses shall be expedited and "takes precedence over any other."

Thus, slightly more than seven months of the 12.4 months' delay attributable to the state was due to the trial court following the legislative mandate of ORS 44.545 to give priority to the felony cases involving child witnesses. We conclude that, under those circumstances, the court's prioritization of cases expedited pursuant to ORS 44.545 constituted a legally sufficient reason for the court to exercise its discretion to continue defendant's case pursuant to ORS 137.750 rather than to dismiss the case due to unreasonable delay.

Affirmed.