Argued and submitted February 9, reversed and remanded May 11, petition for review allowed September 27 (360 Or 422), dismissed November 28, 2016 (360 Or 637)

In the Matter of A. E. P.,
a Child.

**DEPARTMENT OF HUMAN SERVICES,**
*Petitioner-Respondent,*

*v.*

**K. A. H.,**
*Appellant.*

Umatilla County Circuit Court
JV150031;
Petition Number JV150031A;
A160261

381 P3d 1052

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Michael S. Shin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Steven T. Wax, Aliza B. Kaplan, and Janis C. Puracal filed the brief *amicus curiae* for Oregon Innocence Project.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

### GARRETT, J.

Mother appeals a juvenile court judgment asserting jurisdiction over her child, A. On appeal, the issues are (1) whether the juvenile court erred in admitting scientific evidence in the form of a medical diagnosis that A had been abused, and (2) whether the court erred in allowing the diagnosing physician to testify by telephone rather than in person. For the reasons explained below, we agree with mother that, because the physician's testimony was wholly determinative of the outcome of the proceeding, ORS 45.400 required the physician to appear in person. Because the juvenile court erred in allowing his telephonic testimony, we reverse the judgment and remand for further proceedings. In light of that disposition, we do not address the merits of mother's challenge to the scientific evidence.

The facts pertinent to our review are undisputed. On March 8, 2015, A, who was six months old at the time, was taken to an emergency room in Pendleton after her parents called 9-1-1. Mother reported that A had been injured when A's six-year-old sister, who was carrying A, tripped and fell on top of A onto the living room floor, which was carpeted. Mother said that she had left the living room to get a clean diaper for A, heard a "thud," and ran back to the living room to find A crying. While mother held A, A stopped crying, went "limp and pale," began "taking shallow breaths," and appeared "almost unconscious."

At the emergency room, A appeared tired but was able to consume a small amount of liquids. She was discharged from the hospital that evening, but her parents brought her back the following day, March 9, because of concerns about possible dehydration. At that time, A had a slight abrasion on her head but displayed no swelling, bruising, or bone fractures. Examination of A revealed a "left hemisphere mixed density [subdural hemorrhage]" with no visible skull fracture.

Later that day, A was transferred to Doernbecher Children's Hospital in Portland for further examination. The treating physician there was Dr. Valvano, the medical director of the hospital's suspected-child-abuse program.

Tests ordered by Valvano confirmed the subdural hemorrhage and indicated that A did not suffer from any bleeding disorder or bone disease. The tests also did not reveal any "pattern injuries" or bone fractures. Valvano also consulted with an ophthalmologist, who identified "numerous" retinal hemorrhages in her left eye that "extended to the midperiphery." Valvano did not identify any underlying disorders in A that he believed could cause retinal hemorrhaging.

In a written assessment, Valvano stated that A's brain and retinal hemorrhages "raise concern for nonaccidental trauma." He explained, among other things, that the "pan hemispheric size of the [brain] hemorrhage is not expected from a short fall such as described by parents," and that the "[m]ixed density" nature of the brain hemorrhage can be an indicator of "hemorrhage of multiple ages, raising concern that [A] suffered another injury in addition to the injury from the fall." Valvano also stated in his report that A's retinal hemorrhages "are concerning for abusive head trauma"; that they "are not commonly associated with accidental falls and, when present, are few in number and limited to the posterior pole"; and that "[t]he pattern of retinal hemorrhages in [A]'s left eye is more extensive than would be expected from a short fall." Valvano concluded that the reported fall, as described by A's parents, "does not clearly explain the full scope of the patient's medical findings" and that A's injuries had a "high association with abusive head trauma."

Valvano recommended that a follow-up bone survey be conducted two weeks later to look for fractures that may have been missed in the initial survey. During that period, A was returned to mother's care under an "in-home safety plan" prescribed by the Department of Human Services (DHS). The bone survey was conducted on April 3, 2015, and revealed that A had a posterior rib fracture was "not consistent with the fall" but rather, "characteristic of physical abuse."

Based on Valvano's assessment, DHS took A into protective custody and filed a dependency petition under ORS 419B.100. The petition alleged that A's conditions and circumstances endangered her welfare because, while in

mother's custody, she "suffered injuries, including but not limited to subdural hemorrhage, retinal hemorrhage, [and] fractured left rib * * * that are at variance with the explanation given."

Before the jurisdictional trial, mother moved to exclude any evidence based on the theory of "shaken baby syndrome" or "abusive head trauma" (hereinafter SBS/AHT). The juvenile court conducted an evidentiary hearing on June 24, 2015. Testifying by telephone, Valvano said, among other things, that he had previously testified as an expert on the SBS/AHT theory, that it is generally accepted among child abuse pediatricians, and that it is considered a medical diagnosis. The juvenile court denied mother's motion to exclude the evidence.

DHS moved to allow Valvano to testify at the judicial hearing by telephone, under ORS 45.400. In support of the motion, DHS argued that traveling from Portland to Pendleton would require Valvano to miss a full day of work, that he was the hospital's only pediatrician specializing in child abuse, and that it would be very difficult to obtain replacement coverage. Mother objected that she could not effectively cross-examine Valvano over the telephone. She further argued that, under ORS 45.400(3)(b), the court was not permitted to allow telephonic testimony because Valvano's testimony would be "determina[tive] of the outcome" of the case.

The juvenile court granted DHS's motion. The record does not include a copy of the court's ruling or the grounds for its decision.

The jurisdictional trial occurred on August 5, 2015, at which Valvano testified by telephone. Valvano described his findings as to A's injuries and testified that each "by itself is highly associated with inflicted trauma and rarely associated with accidental trauma." He stated that it was "highly improbable" that the rib fracture resulted from A's sister coming into contact with her during a fall. Valvano concluded that, "ultimately, we have three findings here: Subdural hemorrhages, retinal hemorrhages, and rib fractures. And the one diagnosis that clearly explains all of those findings is abuse." A's caseworker testified that jurisdiction

was necessary because "we don't know what happened and who was the perpetrator." The juvenile court entered a judgment asserting jurisdiction over A "based on the unexplained injuries [and] the credible testimony of Dr. Valvano concerning the head injury and the rib injury."

On appeal, mother challenges the jurisdictional judgment on two grounds. First, she argues that the juvenile court improperly allowed the use of SBS/AHT evidence, which, according to mother, fails the *Brown/O'Key* standard for admissibility of scientific evidence. *See State v. Brown*, 297 Or 404, 416-18, 687 P2d 751 (1984) (explaining that whether evidence is admissible as "scientific" evidence requires application of OEC 401, 702, and 403, and setting forth relevant factors); *State v. O'Key*, 321 Or 285, 303-05, 899 P2d 663 (1995) (considering additional factors in determining whether scientific evidence is admissible). Second, mother argues that the juvenile court erred under ORS 45.400 in allowing Valvano to testify by telephone at the hearing over mother's objection.

The parties sharply dispute a number of issues related to the SBS/AHT theory, including the extent to which it is accepted by experts in the field, how to define the relevant "field," the scientific validity of Valvano's diagnosis of SBS/AHT, and whether mother's scientific arguments were adequately preserved for our review.[1] We conclude that it is unnecessary, at this stage of this dependency case, for us to address the merits of those arguments, because we are persuaded by mother's contention that the juvenile court made a procedural error in allowing Valvano to appear by phone under ORS 45.400, and that that error requires reversal and remand.

Initially, we address the standard of review. We have not had occasion in a published case to interpret ORS 45.400. Both mother and the state propose that we review

---

[1] Mother, on appeal, presented evidence challenging the validity of the SBS/AHT theory that she did not first present to the juvenile court. Mother asserted that preservation principles were not an impediment to her doing so. Without opining on the correctness of that assertion, we caution that mother, on remand, would be well advised to provide the juvenile court with the first opportunity to consider any challenges that mother may wish to make to the evidence on which DHS relies.

the juvenile court's ruling under an abuse-of-discretion standard. For the following reasons, we conclude that that is not the correct standard, and we instead review for legal error.

In interpreting a statute, our primary concern is the statute's text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We may also consider legislative history, to the extent that it is helpful. *Id.* at 172.

ORS 45.400 provides, in relevant part, as follows:

"(1) Upon motion of any party and for good cause shown, the court *may order* that the testimony of the party or any witness for the moving party be taken by telephone or by other two-way electronic communication device in any civil proceeding or any proceeding under ORS chapter 419B.

"* * * * *

"(3) Except as provided under subsection (4) of this section, the court *shall allow* testimony under this section upon a showing of good cause. The court *may not allow* the use of telephone testimony in any case if:

"(a) *The ability to evaluate the credibility and demeanor of a witness or party in person is critical to the outcome of the proceeding*;

"(b) *The issue or issues the witness or party will testify about are so determinative of the outcome that face-to-face cross-examination is necessary*;

"(c) A perpetuation deposition under ORCP 39 I is a more practical means of presenting the testimony;

"(d) The exhibits or documents the witness or party will testify about are too voluminous to make telephone testimony practical;

"(e) Facilities that would permit the taking of telephone testimony are not available;

"(f) *The failure of the witness or party to appear personally will result in substantial prejudice to a party in the proceeding*; or

"(g) Other circumstances exist that require the personal appearance of a witness or party."

(Emphases added.)

The statute thus begins by stating a general rule that the court "may order" testimony by telephone "for good cause shown." ORS 45.400(1). Subsection (3) then clarifies that, except as provided in subsection (4) (which addresses jury trials), the court "shall allow" telephonic testimony for good cause shown. The next sentence in subsection (3), however, carves out several exceptions in which the court "may not allow the use of telephone testimony," including "in any case" in which the issues to which a witness will testify are outcome-determinative, ORS 45.400(3)(b), or if a witness's testimony by telephone would result in substantial prejudice to a party in the proceeding, ORS 45.400(3)(f).

The initial phrase of ORS 45.400—providing that the trial court "may order" testimony by telephone—suggests an entrustment of discretion to the trial court. But the subsequent language in the statute largely or completely eliminates that discretion. That is because the statute goes on to clarify that the trial court "shall allow" telephonic testimony for good cause in cases other than jury trials, *except that* in certain enumerated circumstances, the court "may not" allow such testimony. We note that, in other contexts, we have held that whether good cause exists is generally a legal question. *See DHS v. Three Affiliated Tribes of Fort Berthold*, 236 Or App 535, 550, 238 P3d 40 (2010) (disagreeing with the parties that good cause "is a matter of judicial discretion") (citing *State v. Johnson*, 339 Or 69, 86, 116 P3d 879 (2005)). In this case, however, we do not need to resolve whether the determination of "good cause" under ORS 45.400 is a legal question or a matter of judicial discretion because the dispute here does not turn on the juvenile court's assessment of good cause for allowing Valvano to appear by telephone. Rather, this dispute turns on the interpretation of the statutory conditions under which telephonic testimony "may not" be allowed even if "good cause" exists. As we next explain, whether such a condition exists is a question of law, not a matter of discretion for the trial court.

In the context of evidentiary rulings, the Supreme Court has explained that "'discretion' *** refers to the authority of a trial court to choose among several legally

correct outcomes." *State v. Rogers,* 330 Or 282, 312, 4 P3d 1261 (2000). However, "[i]f there is only one legally correct outcome, 'discretion' is an inapplicable concept." *Id.* Only if there is "more than one correct outcome" does the appellate court "continue to review whether the trial court abused its discretion in choosing an outcome." *Id.*

Although this case does not involve an evidentiary ruling, the reasoning in *Rogers* is instructive. Here, ORS 45.400(3) states that a court "may not allow" telephone testimony if any of the circumstances covered by ORS 45.400(3)(a) to (f) are present. Therefore, the trial court must determine whether those situations exist in a given case. In this case, the juvenile court was asked to consider whether, under ORS 45.400(3)(b), Valvano's testimony was "so determinative of the outcome" that face-to-face cross-examination was required, and, under ORS 45.400(3)(f), whether allowing Valvano to testify by telephone would substantially prejudice mother. Neither of those inquiries permits "more than one correct outcome." *Rogers,* 330 Or at 312.

In the case of ORS 45.400(3)(b), a witness's testimony is either "so determinative of the outcome" that a party must be permitted live cross-examination, or the testimony is something less than that, and, therefore, face-to-face cross-examination is not required. Similarly, under ORS 45.400(3)(f), the failure of a witness to appear personally either will result in substantial prejudice, or it will not.[2] Because there cannot be "severally legally correct outcomes" under either subsection, the statute does not afford the juvenile court discretion in applying them. Rather, the juvenile court's role in applying ORS 45.400(3) is to apply a rule of law to a particular set of facts. Thus, we review for legal error. *See Rogers,* 330 Or at 312 (where a determination can only yield "one legally correct outcome," we review that determination for errors of law).

---

[2] In another context, we have held that a trial court's determination of whether a party has demonstrated substantial prejudice is reviewed for legal error. *See, e.g., State v. Williams,* 272 Or App 770, 771, 358 P3d 299 (2015) (reviewing for legal error a trial court's determination that a defendant failed to established substantial prejudice when the trial court denied his motion to sever charges); *State v. Luers,* 211 Or App 34, 43, 153 P3d 688, *adh'd to as modified on recons,* 213 Or App 389, 160 P3d 1013 (2007) (same).

Turning now to the parties' arguments, mother argues that the juvenile court erred in allowing Valvano to testify by telephone for two reasons: (1) his testimony was "determinative of the outcome" because his diagnosis of abuse formed the entire basis of the state's jurisdictional case; and (2) mother was substantially prejudiced by the inability to cross-examine Valvano in person regarding the scientific foundation for the SBS/AHT theory.

DHS, for its part, agrees that ORS 45.400(3) "prohibits telephonic testimony" in both of the circumstances covered by ORS 45.400(3)(b) and (f), but contends that "neither of those provisions applies in this case." However, DHS also *concedes* that "it is undisputed" that Valvano's testimony was outcome-determinative—but still argues that face-to-face examination was not necessary. That is so, according to DHS, because

> "the central issue in this case concerned Dr. Valvano's medical determination that [A]'s injuries were suggestive of nonaccidental trauma and were inconsistent with mother's report of a short fall. That determination—unlike, for example, a credibility determination concerning whether a witness is telling the truth—turned on an assessment of whether the diagnosis was medically justified. In other words, the juvenile court had to determine whether the reasons Dr. Valvano provided for the AHT diagnosis were valid and whether the medical evaluation was adequate. As such, the determination did not depend on any credibility assessment that would have been affected by a face-to-face cross-examination."

We reject DHS's argument for two reasons. DHS proceeds from a premise that assessments of credibility play a role in the "outcome-determinativeness" inquiry under ORS 45.300(b). As explained below, that premise is wrong. But even if one accepts it, we disagree with DHS's description of how credibility determinations interact with the trial court's gatekeeping function regarding scientific evidence. DHS contends that mother could not have benefitted from a face-to-face examination of Valvano unless the juvenile court was called upon to evaluate Valvano's personal credibility, *i.e.*, whether he was "telling the truth." On the contrary, one might seek to discredit an expert's opinion for reasons based

not on the expert's own credibility, but, rather, on the soundness of the science on which the expert relied. Aggressive and effective cross-examination as to the scientific basis for an expert opinion might shake the juvenile court's confidence in the science even if the testifying witness appears to be honest. Furthermore, DHS's position that the juvenile court's decision "did not depend on any credibility assessment"—because Valvano was testifying only to his expert "medical determination" that the child's injuries were consistent with SBS/AHT—ignores the fact that the juvenile court *did* consider Valvano's credibility (and specifically noted it) in making its decision to assert jurisdiction over A. Thus, it is entirely possible that, had Valvano testified in person, the juvenile court would have made the same—or *different*—credibility findings based on its observations of his testimony under cross-examination.

Second, and more fundamentally, the premise of DHS's argument is incorrect. The undisputed fact that Valvano's testimony was outcome-determinative eliminates any need to consider whether his "credibility" was at stake. That conclusion follows from the plain language of the statute. Again, the statute lists a series of situations in which the juvenile court "may not allow" the use of telephonic testimony. The first listed category are cases where the "ability to evaluate the credibility and demeanor of a witness or party in person is critical to the outcome." ORS 45.400(3)(a). The *next* listed exception, however, includes situations where "the issue or issues the witness or party will testify about are so determinative of the outcome that face-to-face cross-examination is necessary." ORS 45.400(3)(b). In other words, the legislature has separated the question of whether a witness's "credibility and demeanor" are at issue from the question of whether a witness's testimony will be "determinative of the outcome." That separation reflects a legislative decision to make outcome-determinativeness an independent basis for requiring in-person testimony, regardless of issues of credibility and demeanor.

For the same reason, DHS's next argument—that mother was not prejudiced by the telephonic appearance because she was still able to cross-examine Valvano, albeit

with some inconvenience—is unavailing, in part, because the question of "substantial prejudice" is *also* addressed in its own subsection, thereby making it a separate consideration. ORS 45.400(3)(f). The statute evinces a policy judgment that, if a witness's testimony will be outcome-determinative, the opposing party has a right to face-to-face cross-examination, period.

Furthermore, DHS's position that mother was merely inconvenienced—but not substantially prejudiced— by her inability to cross-examine Valvano in person is unpersuasive given the critical nature of Valvano's testimony to the case. Mother explained to the juvenile court that she had planned to cross-examine Valvano with scientific research and that she could not effectively do so over the telephone. Given that his testimony was the only evidence that definitively linked A's injuries to a theory of abuse, any significant hindrance in effectively cross-examining him amounted to substantial prejudice under these circumstances.

Finally, DHS suggested at oral argument that the statute's use of the phrase "*so* determinative of the outcome that face-to-face cross-examination is necessary" (emphasis added) implies that there are degrees of outcome-determinativeness, and that a trial court therefore retains some discretion to allow telephonic testimony depending on the situation. We do not further consider that possibility because, even if one could imagine a circumstance in which DHS's interpretation would prevail, it cannot prevail here. DHS has conceded that Valvano's testimony was "outcome-determinative." Indeed, Valvano's testimony made up the entirety of DHS's jurisdictional case. We understand the legislature to have directed, in ORS 45.400(3)(b), that, in such a case, the parent should have the opportunity to cross-examine the witness in person. Accordingly, we conclude that the juvenile court erred in allowing DHS to present Valvano's testimony by telephone.

Having concluded that the juvenile court erred, we further conclude that that error requires a remand. DHS makes no argument that, even if the juvenile court erred, we should nevertheless affirm (*e.g.*, because any error was harmless). Furthermore, because "[p]arental rights are of

paramount importance[,] proceedings affecting those rights must comport with due process." *State ex rel Juv. Dept. v. Burris*, 163 Or App 489, 495, 988 P2d 414 (1999) (applying principle where mother was given insufficient notice regarding proceedings and reversing judgment establishing dependency jurisdiction). Here, mother was not provided with the protections of the statute, which reflects the legislature's view that in-person cross-examination is "necessary" when a witness's testimony will be determinative of the outcome. That view—expressed in the same statute that addresses circumstances in which in-person assessment of a witness's credibility is "critical" and when the absence of in-person testimony "will result in substantial prejudice"— demonstrates the legislature's determination that in-person testimony may be crucial to the fundamental fairness of trial proceedings in the identified circumstances. Moreover, in this case, as we have explained above, mother has shown how she was prejudiced by her inability to effectively cross-examine Valvano over the telephone. Under the circumstances, we conclude that reversal and remand is required.

Reversed and remanded.